123 So.2d 28

**SMITH TRANSFER COMPANY, Inc.**

v.

**ALABAMA PUBLIC SERVICE COMMISSION et al.**

3 Div. 835.

Supreme Court of Alabama.

Sept. 8, 1960.

Jack Crenshaw, Montgomery, for appellant.

John Patterson, Atty. Gen., Wm. C. Younger, Asst. Atty. Gen., and Wm. F. Black, Montgomery, of counsel, for appellee Commission.

Maurice F. Bishop and Robt. S. Richard, Birmingham, and Wm. Inge Hill, Montgomery, for intervener appellees.

GOODWYN, Justice.

This is an appeal by Smith Transfer Company, Inc. (herein referred to as "Smith"), from a final decree of the circuit court of Montgomery County, in equity, affirming orders of the Alabama Public Service Commission denying Smith's application for amendment of its Certificate of Public Convenience and Necessity No. 1972, which authorizes it to transport commodities, insofar as pertinent to this appeal, as follows:

"Commodities: Petroleum and petroleum products in tank trucks only, over

"Irregular Routes:
From Mobile, Choctaw Point, and other terminals of water shipments of petroleum and petroleum products in Mobile County, on the one hand, and all points and places south of U. S. Highway 80 and points 50 miles north of U. S. Highway 80, and return a rejected or refused shipment."

Smith, by its application, seeks an extension of its authority so as to permit it to transport the same commodities, in the same manner, and also over irregular routes, "between Mobile and all points and places within ten miles thereon [sic] on the one hand, and all points and places south of a line fifty miles North of U. S. Highway 80 on the other hand."

Smith's application was opposed by several carriers. After a hearing the Commission denied the application. Smith then appealed to the circuit court of Mongomery County, in equity. That court rendered a decree affirming the Commission's orders. Smith brings this appeal from that decree.

■■ While there is no presumption in favor of the decree of the circuit court, based as it is upon the record of the proceedings before the Commission and not upon evidence taken orally before the court (Code 1940, Tit. 48, § 82; Alabama Public Service Commission v. Decatur Transfer & Storage, 257 Ala. 346, 348, 58 So.2d 887), such rule of review is not applicable to orders of the Commission. As said in Railway Express Agency v. Alabama Public Service Commission, 265 Ala. 369, 374, 91 So.2d 489, 494:

"The order of the Public Service Commission on appeal to this court is taken as prima facie just and reasonable, and the finding of the Commission will not be overturned if supported by legal evidence of substantial weight and probative force. Section 82, Title 48, Code 1940; North Alabama Motor Express, Inc. v. Rookis, supra [244 Ala. 137, 12 So.2d 183]; Alabama Public Service Commission v. Crow, 247 Ala. 120, 22 So.2d 721; Alabama Public Service Commission v. Nunis, 252 Ala. 30, 39 So.2d 409; Alabama Public Service Commission v. Higginbotham, 256 Ala. 621, 56 So.2d 401."

In discussing the review of findings of the Commission, this court, in North Alabama Motor Express v. Rookis, 244 Ala. 137, 140, 12 So.2d 183, 185, supra, had this to say:

"The terminology of Section 82 [Tit. 48, Code 1940], supra, is to be construed in connection with Section 301(9) [§ 9 of "Alabama Motor Carrier Act of 1939", Acts 1939, p. 1064 et seq.; Code 1940, Tit. 48, 1955 Cum. Pocket Part, p. 105, et seq.], supra, requiring the issuance of the certificate if it be found, after a public hearing, that the proposed service 'will be required by the present or future public convenience and necessity.' In solving this inquiry, the Commission shall, among other things, consider matters set out in (1), (2) and (3) of Section 301(9), supra. The present and future public need in the matter of transportation is a major inquiry. This calls for conclusions of fact upon evidence heard by a special tribunal set up as a permanent body to deal with the problems involved. Capable, understanding men, free of all interest save the performance of public duty, weighing evidence in the light of experience, is the set-up contemplated by law. Courts should not and do not overturn their findings save upon a clear conviction that their orders are wrong and unjust. See 42 Am.Jur. 644 et seq., Section 217.

"Section 82, construed as a whole and in the light of well-established principles, means the finding of the Commission will not be overturned if supported by legal evidence of substantial weight and probative force.

\*　\*　\*　\*　\*　\*

" 'Substantial evidence,' as used in Section 82, supra, means legal evidence."

In denying the application, the Commission concluded and found as follows:

"Upon consideration of all the facts and evidence of record, we conclude and find that existing transportation service is adequate to meet the reason-

able public needs within the territory and to the extent sought by the application, and that there would be no substantial advantages to the public which would compel the certification of another carrier in addition to the existing authorized carrier. * * *"

■ While there is evidence from which the Commission could have found a need of additional service for the intrastate transportation of petroleum (crude oil), as sought by Smith, there is also evidence which we think amply supports the Commission's finding that the existing transportation service is adequate.

It seems that the Commission, in finding that adequate transportation service already existed, gave consideration to Certificates Nos. 2501 and 2240, held by W. M. Chambers Truck Line and Hearin Tank Lines, Inc., respectively. (Certificate No. 2240 was held by Liquid Carriers, Inc., at the time of the hearing and later transferred to Hearin Tank Lines, Inc.) In this connection, there was included in the Commission's original order the following:

"* * * The protesting carriers have facilities available for the purpose of hauling petroleum in intrastate commerce. However, an issue was raised as to their authority to transport such petroleum in intrastate commerce. Protestant W. M. Chambers, d/b/a W. M. Chambers Truck Line, hereinafter referred to as Chambers, holder of Certificate No. 2501, has authority, insofar as is here pertinent, to transport:

"'Petroleum products, in bulk, between Mobile and all points and places within 150 miles thereof.'

Liquid Carriers, Inc., holds Certificate No. 2240 authorizing the transportation of:

"'Liquid commodities, in bulk, in tank trucks only (except petroleum products), over irregular routes between all points and places in the State of Alabama.'

Therefore, the commodities authorized to be transported by Chambers under Certificate No. 2501 are specifically excepted from the commodities authorized to be transported by Liquid Carriers, Inc., under Certificate No. 2240. The issue was raised as to whether or not the commodity description of 'petroleum products' includes 'petroleum' or 'crude oil'. Both of these protestants contend that the commodity description of their authority embraces 'petroleum' but it is obvious that only one of the two has authority to transport 'petroleum.' Although it was questioned as to whether or not this Commission has the authority to construe certificates issued by it, nevertheless in each proceeding involving an application for certificate of public convenience and necessity, we must construe certificates of protesting carriers to satisfy the statutory requirements of determining whether existing transportation service of all kinds is adequate to meet the reasonable public needs.[2] [[2] Section 301(9)B(1), Title 48, Code of Alabama 1940, 1955 Cumulative Pocket Part.] Moreover, in this instance no ambiguity exists in the commodity descriptions of the certificates of protesting carriers and there can be no reasonable question thereof. The descriptions are clear and distinct. Webster's [1] [[1] Webster's New International Dictionary, Second Edition, Unabridged] defines 'petroleum' as:

"'Petroleum—

"'An oily, inflammable liquid, almost colorless to black but usually of a dark-brown or greenish hue, existing at many places in the upper strata of the earth. * * * *Petroleum* is usually obtained by pumping or is forced out of drilled wells by the pressure of the gas occurring with it. It is prepared for us by fractional distillation into

gasoline and naphthas, burning oils (as kerosene), lubricating oils and waxes, fuel oils, asphalts and road oils, coke, etc. These *products* may be further separated and refined.' (Emphasis ours.)

*Products of petroleum,* or 'petroleum products', clearly do not embrace petroleum itself, for petroleum is the raw (or 'crude') material from which the 'products' are made. Certificates have been issued by this Commission authorizing the transportation of 'petroleum' in conjunction with the transportation of 'petroleum products' but the conjunctive designation has been clearly set forth by the description 'petroleum *and* petroleum products.' It is unconscionable to construe that petroleum may be transported by a carrier restricted to the transportation of *petroleum products.* On the other hand, there can be no question that *petroleum* is a 'liquid commodity,' and that since only *its products* are restricted from the certificate of Liquid Carriers, Inc., its transportation is unquestionably authorized under the broad generic commodity description of 'liquid commodities.' Also in this connection see R. B. Wilson Common Carrier Application, 64 M.C.C. 39, wherein the Interstate Commerce Commission, Division 5, found that the term 'petroleum products' as used in certificates issued by that Commission does not authorize the transportation of petroleum.

"Liquid Carriers, Inc., has available suitable and sufficient equipment in Alabama for the transportation intrastate of petroleum. * * * Liquid Carriers, Inc., is ready, willing, able and anxious to handle any such shipments of petroleum moving intrastate in Alabama."

In the Commission's supplemental report, on Smith's petition for rehearing, it was observed:

"Perhaps we should not have used the word 'construe' in this connection as if there is no ambiguity, and we found there is none, in the protestant's certificates, then there is no necessity for calling into play the rules of construction or interpretation. We are fully aware that under the decisions of the Supreme Court of Alabama the matter of the construction or interpretation of an order of the Commission is a judicial function—one that cannot be exercised by the Commission, and we did not 'construe' the certificates of protestants in the original report. We merely examined them and, finding no ambiguity, stated what they authorized."

Smith argues that the Commission is without authority to "construe" certificates issued by it and erred to a reversal in doing so in this proceeding.

█ There are cases containing statements to the effect that "it is for the courts and not the Public Service Commission to construe the orders of the latter." Deaton Truck Line v. Birmingham-Tuscaloosa-M. M. F. L., 264 Ala. 345, 348, 87 So.2d 421, 423; Smith Transfer Co. v. Robins Transfer Co., 258 Ala. 406, 409, 63 So.2d 351; Murray v. Service Transport, 254 Ala. 683, 685, 49 So.2d 221; Alabama Power Co. v. Patterson, 224 Ala. 3, 5, 138 So. 421. This does not mean that the Commission is prohibited from placing a construction on its orders but, rather, that the ultimate authority to construe such orders rests with the courts. Indeed, this principle was recognized in Smith Transfer Co. v. Robins Transfer Co., [258 Ala. 406, 63 So.2d 354] supra, from which we quote the following:

"We have said in construing orders of the Alabama Public Service Commission that it is proper to consider contemporaneous construction of the Commission and official usage. Alabama Power Co. v. Patterson, supra;

Murray v. Service Transport, Inc., supra."

The stated principle originated in Alabama Power Co. v. Patterson, [224 Ala. 3, 138 So. 422] supra, but even there the Commission's authority to construe its orders was recognized. As there said:

" * * * Of course, it is for the court and not the public service commission to construe the orders of the latter, but 'contemporary construction and official usage are among the legitimate aids in the interpretation of statutes.' Wetmore v. State, 55 Ala. 198. This rule is particularly applicable when considering rules or orders by a department charged with the duty of making and enforcing same. * * *"

Before the Commission can determine whether adequate service is already provided for, it is necessary to consider the authority already given, that is, the certificates held by other carriers covering the same area. If such certificates are ambiguous they must be construed. If clear and unambiguous there is, of course, no need for construction. But, in either event, before the Commission can arrive at a conclusion it must necessarily decide whether the existing service is adequate. To so decide, it may be necessary to construe an existing certificate. If so, it is for the Commission, in the first instance, to determine its meaning, that is, to construe it, with the final and ultimate construction resting with the courts.

We think the Commission correctly interpreted the certificates. However, Smith argues that, even so, the authority under Certificate No. 2240 to transport petroleum has not been exercised, but has remained "dormant", and, therefore, there has been no adequate service. On the other hand, there is evidence that up to the time of the hearing the petroleum had been transported in interstate commerce and that Hearin Tank Lines, Inc., the holder of said certificate, is willing and able to furnish ade-quate transportation service in intrastate commerce.

The decree appealed from is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and COLEMAN, JJ., concur.