177 So.2d 441

**ALABAMA POWER COMPANY**

v.

**CENTRAL ALABAMA ELECTRIC COOPERATIVE.**

**5 Div. 806.**

Supreme Court of Alabama.

July 15, 1965.

Martin, Balch, Bingham & Hawthorne, Birmingham, and Holley, Milner & Holley and Reneau & Reneau, Wetumpka, for appellant.

Oakley W. Melton, Jr., and Rushton, Stakely & Johnston, Montgomery, for appellee.

Wilbanks, Wilbanks & Dillon, Alexander City, for Elmore Service Corp., amicus curiae, in support of appeal.

HARWOOD, Justice.

For some ten years the Elmore Service Corporation has owned and operated Radio Station WETU, located adjacent to Highway 231 some two miles north of Wetumpka. During its entire existence electrical energy for the operation of WETU has been supplied by the Alabama Power Company.

Elmore Service is in the process of erecting a new broadcasting facility on property it has acquired some two miles south of Wetumpka, also on Highway 231.

Elmore Service requested the Power Company to continue to supply electrical energy to its new facility, and on 8 April 1964, a contract was entered into between the Power Company and Elmore Service whereby the Power Company was to supply electrical energy to Elmore Service and its radio station at its new location. Under this contract, effective 18 June 1964, the Power Company agreed to supply Elmore Service and WETU, and Elmore Service agreed to purchase an electric load of 70 kilowatts for an initial term of five years. Elmore Service had furnished the Power Company, at the time of the execution of the contract, a list of its appliances and equipment which will use electric energy at its new station, and this list indicated that the electrical energy requirements of WETU will impose a load of approximately 75.4 kilowatts.

After execution of the above contract, the Power Company prepared to extend its transmission line some .8 of a mile along Highway 231 south of Wetumpka. This transmission line would parallel an existing transmission line of the Central Alabama Electric Cooperative, a corporation.

Thereafter, the Cooperative sought and obtained in the Circuit Court of Elmore

County a temporary injunction enjoining the Power Company from constructing the new distribution line, and from furnishing electric service to WETU at its new location.

The crux of the complaint was that the construction of the new line by the Power Company would violate provisions of a power supply contract entered into between the Power Company and the Cooperative on 14 May 1953. The provisions of this contract pertinent to this review will be adverted to later in this opinion.

The Power Company filed a motion to discharge the temporary injunction, and without waiving such motion, also filed its sworn answer and a motion to dissolve the temporary injunction.

After hearing, the court denied the Power Company's motion to discharge, and to dissolve the temporary injunction.

No testimony was taken at the hearing, and the motion to dissolve was submitted on the bill of complaint, as amended, with the exhibits thereto, the sworn answer, the matters stated in the motion to dissolve, and affidavits with incorporated exhibits.

This appeal, by the Power Company, is from the order denying its motion to dissolve the injunction.

The Power Company is a public utility organized under the laws of the State of Alabama, and has an electric franchise to serve the City of Wetumpka, and also holds a franchise from Elmore County to construct and operate electric lines along the public highways in Elmore County.

The complaint avers, and the affidavit of Chester Wingard, manager of the Cooperative, is to the effect that the existing line of the Cooperative is of sufficient capacity to serve the needs of the radio station in its new location; that prior to filing the complaint the Cooperative had endeavored to have Elmore Service secure its electric service from the Cooperative, and had been told by the management of

Elmore Service that the extent of initial electric service required would not exceed 55 Kilowatts, and the Cooperative was in position to supply such service at a price equal to or less than that charged by the Power Company.

At the hearing the Power Company introduced the affidavit of Charles H. Whatley, Vice President of Elmore Service. Mr. Whatley's affidavit is to the effect he had had several telephone conversations with Chester Wingard, manager of the Cooperative, with reference to service by the Cooperative to Radio Station WETU at its new location; that in such conversations Mr. Wingard undertook to induce the radio station to take its power requirements from the Cooperative; that Mr. Wingard had inquired as to the load requirements of the new station and he informed Wingard at the outset that the load requirements would be at least 55 kilowatts; that this estimate was based upon the radio equipment being used in the old station north of Wetumpka; that WETU has purchased and intends to install additional equipment in its new station which will impose a substantially greater electrical demand and will increase the total electric load of WETU in its new location to a point in excess of 70 kilowatts.

That portion of the power supply contract above mentioned between the Power Company and the Cooperative, and which the Cooperative contends prohibits the Power Company from erecting a transmission line to serve WETU, is to be found in paragraph 16 of the contract. This paragraph reads as follows:

"16. Neither party, unless ordered so to do by a properly constituted state regulatory authority, shall duplicate the other's facilities, except in so far as such duplication shall be necessary in order to transmit electric energy between unconnected points on its lines. When such duplicating facilities are so constructed, they shall not be used by the party owning them to serve existing customers served by, or

prospective customers immediately adjacent to, the existing facilities of the other party. Neither party, unless ordered so to do by a properly constituted state regulatory authority, shall distribute or furnish electrical energy to anyone who, at the time of the proposed service, is receiving electric service from the other party, or to anyone having an initial contracted electrical load of less than 67 kilowatts, whose premises are capable of being served by the facilities of the other without extension of its distribution system beyond a distance of two-tenths (0.2) of a mile. The provisions of this Section 16 shall not apply to service by either party to any customer who is located within the corporate limits of a municipality in which such party has an electric franchise."

 Section 16 must be construed as a whole, and not by merely considering one or more paragraphs or sentences alone. Greil v. Stollenwerck, 201 Ala. 303, 78 So. 79. Section 16 contains four sentences. These four sentences relating to separate matters, might well have been set forth as separate paragraphs.

It is appellant's contention that it had a lawful right to construct a transmission line to the radio station under the second and third sentences of Section 16 of the contract.

It is appellee's argument that such contention by the appellant ignores the first sentence of Section 16, and that there are no exceptions to the provisions of the first sentence other than the exception to be found in the last phrase of the first sentence to the effect that "except in so far as such duplication shall be necessary in order to transmit electric energy between unconnected points on its lines" and the further exceptions to be found in the fourth sentence which prevents service by either party to a customer within the corporate limits of a municipality where the other party has a franchise.

We do not agree with the appellee's contention as to construing Section 16. Greil v. Stollenwerck, supra.

Reading Section 16 as a whole it is clear that other duplications of lines are contemplated.

We pretermit appellant's first contention that appellee is barred from furnishing service to Elmore Service under the first part of the third sentence, because the pleadings and exhibits show without dispute that Elmore Service was a customer of appellant, and had been for ten years, and had never been a customer of appellee.

 We pretermit consideration of the above contention since we are clear to the conclusion that the following portions of the third sentence of Section 16 authorizes the appellant's action in this case. This portion reads:

"Neither party unless ordered to do so by a properly constituted state regulatory authority, shall distribute or furnish electrical energy to anyone * * * having an initial contracted electrical load of less than 67 kilowatts, whose premises are capable of being served by the facilities of the other without extension of its distribution system beyond a distance of two tenths (0.2) of a mile."

Certainly one rational inference of the above language is that if the initial contract is for a kilowatt load of more than 67 kilowatts, then either party is free to enter into a contract with a customer for such service, regardless of the length, or duplicity of the transmission line necessary to furnish such service. In other words, the limitation of the extension of the distribution system beyond a distance of two-tenths of a mile can have application only when the contract load is less than 67 kilowatts. As before stated, Elmore had contracted for a load of 70 kilowatts.

224

It would appear that economic feasibility should impose sufficient limitations in such a situation.

■ The above construction, being reasonably inferred, should prevail under the doctrine that "all instruments should be construed contra proferentem; that is, against him who gives, or undertakes, or enters into an obligation." Ashley v. Cathcart, 159 Ala. 474, 49 So. 75; Comer v. Bankhead, 70 Ala. 136.

Being of the conclusion that the appellant had the lawful right to construct the transmission line in question, it necessarily follows that the lower court erred in denying the appellant's motion to dissolve the injunction.

Several other points are argued by appellant as constituting error. In view of the conclusions reached, no useful purpose would be served by a discussion of these points.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.