179 So.2d 725

**ALABAMA POWER COMPANY**

**v.**

**ALABAMA PUBLIC SERVICE COMMISSION et al.**

3 Div. 132.

Supreme Court of Alabama.

Sept. 2, 1965.

Rehearing Denied Nov. 18, 1965.

Steiner, Crum & Baker, Montgomery, and Martin, Balch, Bingham & Hawthorne, Birmingham, for appellant.

Richmond M. Flowers, Atty. Gen., Robt. D. Bradley, Asst. Atty. Gen., and Jas. M. Wright, Sp. Asst. Atty. Gen., for appellee.

John Chason, Bay Minette, T. E. Martin, Montgomery, Carl S. Farmer, Abbeville, E. C. Orme, Troy, Edwin C. Page, Jr., Evergreen, A. A. Smith, Hartford, Adams, Gillmore & Adams, Grove Hill, John W. Coleman, Talladega, James W. Kelly, Geneva, J. M. Williams, Jr., Rushton, Stakely & Johnston, Montgomery, for intervenors-appellees.

MERRILL, Justice.

This appeal is from a decree of the Montgomery County Circuit Court, in Equity, sustaining an order of the Alabama Public Service Commission permitting appellant to issue bonds in the amount of $16,000,000 to provide funds for acquiring or constructing plants, properties, permanent improvements, extensions or additions to be used in its public utility business.

The Public Service Commission granted the request but imposed a condition or limitation and inclusion of the condition caused the appeal to the circuit court, and then to this court when the condition was sustained by the circuit court.

Appellant's petition to the commission was required by Tit. 48, §§ 309 and 310, Code 1940, as amended, which provide:

"§ 309. No utility shall issue any securities, or assume any obligation or liability, as lessor, lessee, guarantor, indorser, surety, or otherwise, in respect to the securities of any other person unless and until, and then only to the extent that, upon application by the utility, and after investigation by the commission of the purposes and uses of the proposed issue, and the proceeds thereof, or of the proposed assumption of obligation or liability in respect of the securities of any other person, the commission by order authorizes such issue or assumption. The commission shall make such order only if it finds that such issue or assumption is for some lawful object within the corporate purposes of the utility, is compatible with the public interest, is necessary or appropriate for or consistent with the proper performance by the utility of its service to the public as such utility and will not impair its ability to perform that service, and, is reasonably necessary and appropriate for such purpose. Any such order of the commission shall specify the purposes for which any such securities or the proceeds thereof may be used by the utility making such application."

"§ 310. The commission, by its order, may grant or deny the application provided for in the preceding section as made, or may grant it in part or deny it in part, or may grant it with such modification and upon such terms and conditions as the commission may deem necessary or appropriate in the premises and may, from time to time, for good cause shown, make such supplemental orders in the premises as it may deem necessary or appropriate and may, by any such supplemental order, modify the provisions of any previous order as to the particular purposes, uses, and extent to which or the conditions under which, any securities so theretofore authorized or the proceeds thereof may be applied; subject always to the requirements of the foregoing section."

The commission imposed this condition:

"* * * No portion of the funds received from the sale of such securities, however, shall be used by petitioner for such new construction of transmission or distribution lines without the approval of this Commission, where such new construction duplicates the electric service of the intervenors in the area in which said intervenors are presently furnishing electric service, or where construction of such lines will be within two-tenths (0.2) of a mile of existing electric distribution lines of any of said intervenors except within the boundaries of a municipality where petitioner is already rightfully and lawfully providing electric service and possesses a franchise therefor."

The Public Service Commission permitted several Rural Electrification Cooperatives and Alabama Electric Cooperative to intervene and one of appellant's assignments of error is that the court erred in allowing them to intervene.

We think the statute, Tit. 48, § 65, Code 1940, is a complete answer to appellant's contention. It reads:

"Every person, firm, corporation, copartnership, association, or organization affected thereby may by petition intervene and become a party to any proceeding before the commission."

The REA cooperatives are taxpayers of the State, customers and competitors of appellant. They showed a direct financial interest as well as a personal interest in the proceeding. The mere fact that they are not subject to regulation by the Public Service Commission is no bar to the obvious right given by the statute, and there was no error in permitting them to intervene and become parties to the proceeding.

We come now to the important and decisive questions in the case: (1) did the commission have the power to impose the condition or limitation in a proceeding seeking approval for the issuance and sale of securities, and (2) was this condition or limitation supported by legal evidence of substantial weight and probative force?

Appellant is subject to regulation by the Public Service Commission, and we stated its right to regulate in Murray v. Service Transport, Inc., 254 Ala. 683, 49 So.2d 221, as follows:

"The Public Service Commission is primarily an administrative body charged with the high duty and responsibility of regulating public utilities. To that end it is vested with authority and powers defined by statute, including the power to make regulations within the powers conferred. In the exercise of its supervisory or executive powers over public utilities it possesses quasi-legislative powers, such as rate making, the granting of franchises, etc.; also quasi-judicial powers, as a fact finding body on hearings in which parties in interest may present evidence and have a hearing. The quasi-judicial functions are incidental to and in aid of the proper exercise of the regulatory powers for which the commission has its being. Avery Freight Lines, Inc., v. White et al.,

245 Ala. 618, 18 So.2d 394 [154 A.L.R. 732]."

Title 48, §§ 309 and 310, make it abundantly clear that the commission has the authority to specify the purposes for which any such securities or the proceeds thereof may be used by the utility making such application and "may grant it with such modification and upon such terms and conditions as the commission may deem necessary or appropriate in the premises."

The intervening cooperatives insisted that appellant should be prohibited from using the proceeds to duplicate the lines and facilities of the cooperatives and that the commission should require appellant to secure a certificate of convenience and necessity before making extensions which would duplicate the lines and facilities of intervenors in areas where they are now serving customers with electric energy.

The order of the commission did not state the reasons for the imposition of the condition or limitation, but we think the reason is obvious. The statute, Tit. 48, § 309, places the duty on the commission to investigate "the purposes and uses of the proposed issue" and approve the issuance of the securities only if four prerequisites are found to be present, one of which is that it "is compatible with the public interest."

There was evidence before the commission that appellant had duplicated the lines of intervenors and appellant's president stated to the commission that duplication would continue if an industrial load was involved. It is common knowledge that appellant and the intervenors have fought each other for years, both before the commission and in the courts. If a large portion of the proceeds of the proposed bond issue were used to duplicate the lines and services of the intervenors, both appellant and intervenors could be hurt financially, the investors and the customers of each could be hurt and the service to the public by each could be impaired. It is not difficult to see that unrestricted duplication of

**602**

lines would not be in the public interest, or, as stated in the statute, would not be "compatible with the public interest." But the commission recognized that in some instances duplication might be warranted, and made provision in the limitation that appellant could seek approval of the commission where duplication was thought to be necessary.

Appellant argues that one of our cases supports its contention that the commission is without the power and authority to put such a limitation or condition upon a proposed mortgage of a utility to raise money. The case is Alabama Public Service Commission v. Mobile Gas Co., 213 Ala. 50, 104 So. 538, 41 A.L.R. 872 where this court held that a limitation of the commission that the utility could not issue bonds under a second mortgage in excess of 80% of the value of its property was not a "reasonable exercise of the police power under the relevant and material facts and circumstances entering into the right of alienation sought." There, the commission inserted the condition or limitation because it was a provision in the "underlying mortgage of 1910" which was not before this court on appeal from a decree overruling the demurrer to the bill. This court said, "We are not impressed that the action of the Commission may be justified by such contract provisions of said mortgage." The point was also made that the mortgage on which the commission was acting would be subordinate to the 1910 mortgage. This court also said that "the propriety of the issuance of securities by different public utilities will depend upon the facts in each particular case." We do not think the Mobile Gas case is apt authority here.

■ We conclude that the commission did have the authority to impose the limitation.

Appellant also argues that the commission is not empowered to impose the condition or limitation because it is in violation of the exception in Tit. 48, § 332, which provides that a public utility must secure a certificate of convenience and necessity for construction "except ordinary extensions of existing systems in the usual course of business." Appellant contends that our case of Alabama Power Co. v. Southern Pine Electric Cooperative, 270 Ala. 453, 118 So.2d 907, confirms its argument.

This court has never defined "ordinary extension of existing system in the usual course of business." The majority opinion in Alabama Power Co. v. Southern Pine Electric Cooperative, supra, was limited to the facts in that case and the "majority of the court expressly refrained from deciding the issue" of defining the exempting provision in Tit. 48, § 332, Clarke-Washington Electric Membership Corporation v. Alabama Power Co., 272 Ala. 598, 133 So.2d 488. And in this last cited case, this court once again reached a decision without defining the clause.

■ In the instant case, we follow the previous decisions and do not attempt to apply the exemption clause to situations which might arise in the future. The clause applies not only to electric utilities, but also to gas, water or steam utilities and street or interurban railways. We hold here that the limitation or condition imposed by the commission does not restrict appellant from making "ordinary extensions of existing systems in the usual course of business."

The next important argument is that there is no evidence in the record to support the imposition of condition or limitation. We cannot agree.

The manager of Alabama Electric Cooperative, Basil Thompson, testified that appellant is now serving hundreds of meter services that were formerly served by REA Cooperatives; that duplications occurred around Brewton, the Pollard Oil Field, near Jackson and at Evergreen, Samson Enterprise, Prattville and Goodwater. Suits involving duplications have been resolved in this court.

Some of this evidence was based upon hearsay. The witness was not personally familiar with all the facts in every instance. However, this objection is not fatal where there is also legal evidence. We have said that "the commission may receive and consider evidence shedding some light on the issue, although not admissible under the general rules of evidence." (Citing 42 Am.Jur., Public Administrative Law, §§ 129 and 132.) In this connection it may be observed that members of the commission are not required to be learned in the law of evidence. North Alabama Motor Express v. Rookis, 244 Ala. 137, 12 So.2d 183. There was no absence of legal sworn testimony to support the order of the commission.

The first sentence of Tit. 48, § 82, Code 1940, relating to appeals from orders of the Public Service Commission reads: "The commission's order shall be taken as prima facie just and reasonable." The commission is a special tribunal set up as a permanent body to deal with special problems. Capable, understanding people, free of all interest save the performance of public duty, weighing evidence in the light of experience, is the setup contemplated by law. "Courts should not and do not overturn their findings save upon a clear conviction that their orders are wrong and unjust." North Alabama Motor Express v. Rookis, 244 Ala. 137, 12 So.2d 183.

■ We have held that a finding of the commission will not be overturned if supported by legal evidence of substantial weight and probative force. Smith Transfer Co. v. Alabama Public Service Commission, 271 Ala. 177, 123 So.2d 28, and cases there cited.

The commission is "a body of experts," Alabama Public Service Commission v. Nunis, 252 Ala. 30, 39 So.2d 409; and "the Courts must be careful in reviewing the conclusions of fact of an important administrative body, to guard against a substitution of the Court's own judgment of findings of fact for that of the administrative authority." Alabama Public Service Commission v. Crow, 247 Ala. 120, 22 So.2d 721.

■ Appellant argues that there is no evidence in the record to support the setting of two-tenths of a mile as the maximum distance to be allowed for extension of duplicating lines in some instances, or as to the reasonableness or unreasonableness of such distance. We cannot agree that either appellant, the intervenors or the commission is unacquainted with that terminology or its application. This is the standard distance used in contracts between appellant and the cooperatives in Alabama where the parties contract between themselves, not to duplicate their lines, and the condition is filed with the commission. We had the standard section (16) of the contract before us in Clarke-Washington Electric Membership Corporation v. Alabama Power Co., 272 Ala. 598, 133 So.2d 488, and Alabama Power Co. v. Central Alabama Electric Cooperative, Ala., 177 So.2d 441.[1] We understand, and we are confident the parties understand, that two-tenths of a mile is the maximum length of a secondary and service line. We consider the use of this distance as technical nomenclature clearly understood by all parties, and considered by all parties as reasonable distance under the subject of duplication.

■ Appellant further argues that the order of the commission would require it to violate Tit. 48, § 34 and Tit. 10, § 187, the first requiring it to "render adequate service to the public" and the second requiring it to sell power to any persons etc., requesting or demanding it.

Appellant is not under a statutory duty to serve every individual in Alabama who requests electric service. If this were so, the electric cooperatives would never have been formed because there would have been no need for them. This argument is without merit.

Finally, appellant argues that it was denied due process of law in that the hearing

was concluded more than sixty days after the filing of the petition with the commission in violation of Tit. 48, § 312, Code 1940, and that it was deprived of the right of adequate cross-examination.

 Appellant's original application was filed on February 5, 1963, but an amendment, drastically changing the scope of the application, was filed on March 1, 1963. The commission's order was granted April 25, 1963, less than sixty days from the filing of the amended application. There was no denial of due process.

We have read carefully the record of the alleged denial of the right of cross-examination. We find no denial of any right of appellant and no abuse of discretion in terminating the hearing.

The decree of the trial court is affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and HARWOOD, JJ., concur.