227 So.2d 565

**MOBILE COUNTY GAS DISTRICT, a Corp.**

**v.**

**MOBILE GAS SERVICE CORP. et al.**

**3 Div. 263.**

Supreme Court of Alabama.

Oct. 9, 1969.

Holberg, Tully & Hodnette, Mobile, D. H. Markstein, J., Birmingham, for appellant.

MacDonald Gallion, Atty. Gen., and
Robt. P. Bradley, Asst. Atty. Gen., for
Public Service Commission.

Hill, Hill, Stovall & Carter, Montgomery, Johnston, Johnston & Nettles, Mobile,
for appellees.

COLEMAN, Justice.

An intervenor in a proceeding before the
Public Service Commission appeals from a
decree of the circuit court, in equity,
wherein the court affirmed an order of
the Commission authorizing the issue and
sale of bonds by a regulated public utility.

The utility, Mobile Gas Service Corporation, herein sometimes referred to as
the company, pursuant to Title 48, § 309,
et seq., 1958 Recompilation of 1940 Code,
filed with the Commission the company's

application to issue and sell its bonds in the principal amount of $2,000,000.00. The company alleged that it proposed to apply the proceeds to: (1) Pay the expenses of issue and sale of the bonds; (2) Retire bonds previously issued in the amount of $840,000.00, or to repay bank loans in the amount incurred for such purpose; (3) Repay bank loans estimated to amount to $300,000.00, the proceeds of which had been used to finance the company's construction program; and, (4) The balance to be added to general funds of the company to reimburse the company's treasury in part for expenditures made for construction.

The intervenor, Mobile County Gas District, herein sometimes referred to as the district, is a public corporation organized by the municipalities of Citronelle and Bayou La Batre under Act No. 762, 1951 Acts, page 1319; Title 37, § 402(48) et seq., 1958 Recompilation of 1940 Code. The district is exempt from the jurisdiction of and regulation by the Commission. Act No. 762, Section 18; Title 37, § 402 (64).

On the day set for hearing the company's petition to issue bonds, the district filed its petition to intervene in opposition to the company. The company made objection to allowing the district and others to intervene on the grounds that the company had had no prior notice of the district's intention to intervene and because the district sought to introduce into the proceeding collateral matters.

In its petition to intervene, the district alleges that it owns and operates a gas transmission and distribution system in Mobile County in Citronelle, Bayou La Batre, seven unincorporated communities, the territory surrounding said municipalities, and other portions of Mobile County; that the district purchases gas and sells it for a profit sufficient to operate the system and pay the interest and principal on its bonds as the same become due; that each year, as the district adds more customers, it has increased its purchase of gas; that gross sales of gas for the fiscal year ending in February, 1964, amounted to $577,234.41, and the district expects that its purchase and sale of gas will increase during the current fiscal year; that the district has bonds outstanding in the principal amount of $4,300,000.00; that the bonds have been sold to the general public; and that the proceeds of the bonds had been used to refund bonds previously issued to finance construction of the district's gas system and to improve and expand the system.

The district further alleges that the company owns and operates gas lines and facilities in Mobile and four other municipalities in Mobile County and contiguous areas under franchises issued by the Commission.

The district alleges that, within the preceding twelve months, the company has duplicated the distribution lines and facilities of the district in the areas which it serves and has taken away from the district a number of customers who were already receiving adequate gas service from the district; that part of the proceeds from the $2,000,000.00 of bonds to be issued by the company will be further used to duplicate the lines and facilities of the district and to repay expenditures previously made for such duplications by the company and for further construction of facilities duplicating those of the district; and that approval of the sale of the bonds will provide funds for further construction of such lines and facilities, or to repay expenditures previously made for which the company has neither sought nor received a certificate as required by law; and that the construction of further duplicating facilities will facilitate the company's taking away customers of the district which will make idle and non-productive the facilities in which the district has invested $4,000,000.00, and will thereby prevent the district from paying its legal obligations to the holders of its bonds, all of which will be wasteful and not compatible with the public interest.

The district prays that the Commission will withhold approval of the bond issue, or, in the alternative, will order that none of the funds derived from sale of the bonds by the company, or any other funds of the company, shall be used by it to duplicate facilities of the district which are now in operation or under construction.

The Cullman Jefferson Counties Gas District joined by three cities also filed petition to intervene.

As we have already said, the company objected to the requested intervention. The Commission did not rule on the company's objection to intervention until after the hearing before the Commission. The hearing was conducted by an examiner of the Commission. On the hearing, over the company's objection, counsel for the district was permitted to cross-examine and to offer testimony.

1. The president testified:

"Q All right, sir. How many customers are connected to your facilities now, that were, twelve months ago, connected to the Intervenor's facilities?

"A Approximately a hundred and fifty.

"Q And how many of those are connected to facilities that were built with the money that you are going to repay out of the proceeds of this bond issue?

"A I would have to guess at it, I would say, maybe, a hundred."

2. The president testified:

"MR. MARKSTEIN: Is there any plans under way now, or have any negotiations been entered into with any contractors or construction people for putting a line across Dog River?

"THE WITNESS: Surely.

"MR. JOHNSTON: We object.

"EXAM. WHATLEY: I think he has already answered.

"Q And what is the dimensions of that line?

"A To the best of my memory, it is an eight-inch line across the river; the rest of it is six inches,

"Q All right. The last question I believe I asked, which you have not answered: Is it your intention to use this extension across Dog River to take customers away from this Intervenor?

"MR. JOHNSTON: We object to that.

On the hearing, the treasurer of the company testified that the company had spent for construction $839,273.00 in 1960; $650,384.00 in 1961; $760,899.00 in 1962; $821,031.00 in 1963; and in 1964 the amount would be approximately a million dollars.

As we understand the testimony given by the president of the company on cross-examination, it is to effect that some of the proceeds of the bond issue will be used to repay money used by the company to construct facilities for customers of the company who had formerly been customers of the district.[1] Also, we understand that he testified to effect that the company would, if legally permissible, serve other customers of the district who requested the company's service.[2]

"EXAM. WHATLEY: I think he has already answered the question. I think he said it would not be used to take away any of those customers if I remember his answer correctly.

"MR. MARKSTEIN: I would like to hear the witness answer.

"A I am obligated by law to serve anyone that makes application for service, so long as it is economically feasible and does not place a hardship on the remainder of our customers. Does that answer it?

"Q By that, you mean you will take customers from the Intervenor?

"MR. JOHNSTON: We object to that, taking them. We haven't taken one, and we won't. If they come to us for service, there is nothing for us to do but to serve them, so long as we act within the law, which we propose to do.

"Q Can you answer the question?

"A I answered it for you.

"Q Do you, sir, or do you not, propose to take customers away from the Intervenor?

"MR. JOHNSTON: We object to that as calling for the mental operation of the witness, which could change a hundred times. And yet he is trying to bind us so that he may go into Court and insist that we have made a commitment here which is not definite at all.

"EXAM. WHATLEY: I think the witness has said that he would connect any customers he could under the law.

". . . .

Wayne Bosarge, a director of the district, testified that it had lost some customers to the company and presently has about 4200 customers.

B. T. Newberry, another director, testified that the rates of the district are higher than the rates of the company and that he felt that a loss of 25% of the district's customers would put the district's bonds in default.

The secretary-treasurer of the Union Gas Company, who manages the district, testified that, for the fiscal year 1964, the district's net income was $763.09; and that if the district lost approximately 325 customers, it would be "technically in default" on its bonds, based on the figures for the preceding year, "if all of those things, based on last year, happened."

As we understand the briefs, the district did not and does not oppose the issuing or sale of the bonds by the company; but, the district does oppose the company's using the proceeds of the sale of the bonds to duplicate the facilities of the district and take away from the district customers it is already serving. The district contends that the issue and sale of the bonds, for use of the proceeds by the company to duplicate the facilities of the district, is not "compatible with the public interest," as it is required to be by Title 48, § 309; and, therefore, the order of the Commission authorizing the sale ought to be granted only ". . . . upon such terms and conditions . . . . ." (Title 48, § 310), as will prevent the use of the bond proceeds to duplicate the district's facilities.

The district points out that the Commission imposed such a condition in an order authorizing the issue and sale of bonds in a prior proceeding by a regulated utility and that this court upheld the authity to impose such a condition in Alabama Power Company v. Alabama Public Service Commission, 278 Ala. 597, 179 So. 2d 725.

After the hearing, the Commission granted the company's petition to issue and sell the bonds. In its report, the Commission expressed the opinion:

"(1) That said Mobile County Gas District be, and it is hereby, permitted to intervene herein for the limited purpose of establishing by its evidence that certain areas of its gas distribution system are contiguous to certain areas now being served by Mobile Gas Service Corporation.

"(2) That the petition of Cullman Jefferson Counties Gas District (joined in by the Cities of Graysville, Fultondale and Pleasant Grove) be, and the same is hereby, denied.

"Q Do you propose to use this money to build lines south of Dog River?

"A I will answer that this way: If those customers petition us to serve them, they have got to have some relief. And I am required by law to extend my line, where it is economically feasible to do so, and will not affect my remaining customers.

"Q In your last answer, you said that customers had to have some relief. Relief from what?

"A From the high rates that the district is charging.

"Q So, that you propose to charge lower rates than the Intervenor is charging?

"A They want to use our general service rates, as approved, they will receive our general service rates, as approved by the Commission.

"Q And the way you have been getting customers away from the Intervenor is by charging cheaper rates?

"A No, they pay the same rates that my Mobile customers pay.

"MR. JOHNSTON: We object to that. He has never testified that he has been getting customers away from these gentlemen. The people came to us voluntarily.

"Q Do you know whether or not it is a fact that your rates on file with this Commission are lower than the rates charged by the Intervenors?

"A Yes.

"Q How much lower?

"A Forty-one per cent. Your rates are forty-one per cent higher than mine."

"(3) That said intervention be without prejudice to the rights of petitioner or said intervenor."

The order granting the company's petition contains the following recital:

"6. That the intervenor may, if it deems proper, hereafter file with this Commission such petitions for relief as it may deem fit and proper, then and there to be heard in the usual course of procedure.

"Jurisdiction hereof is retained by Commission for the purpose of making such other and further orders herein as may be found to be reasonable, necessary and proper."

The district appealed to the circuit court. In its bill of complaint, the district prayed that the court order that no portion of the bond issue proceeds shall be used by the company to duplicate the facilities of the district, and for other relief.

In the circuit court, the company filed a motion to dismiss the appeal and asserted, among other grounds, that the Commission was without jurisdiction to allow intervention by the district, and that the district was not a party in interest and was without right to appeal to the circuit court. The court denied the motion to dismiss.

After hearing, the court affirmed the order of the Commission. With respect to the district's contention that the Commission ought to have imposed in its order a condition or restriction against the company's use of the bond issue proceeds to duplicate the district's facilities, the court found that, by paragraph 6 (quoted above) of its order, the Commission sought to preserve to the district any right it might have, without prejudice, to be presented and heard in proper manner in the usual course of procedure.

The district has appealed and assigned as error the court's ruling affirming the Commission's order which denied the dis-

trict's prayer for a restriction against the company's use of the bond proceeds to duplicate the district's facilities. In its brief, the district argues that we should reverse and order the cause to be remanded to the Commission with instructions to take additional evidence to amplify the record as to the distinction between transmission lines and distribution lines, and as to what is or is not an ordinary extension in the usual course of business. The district further asserts that the Commission is under a duty to be consistent in its rulings and should not depart from the standard set in Alabama Power Company v. Alabama Public Service Commission, 278 Ala. 597, 179 So.2d 725, supra.

### *Intervention.*

The company devotes a substantial portion of its brief to the matter of the district's intervention. Apparently, the company argues that the Commission had no authority to allow the district to intervene in any respect; and, although the circuit court's denial of the company's motion to dismiss is not cross-assigned as error by the company, we ought to notice the Commission's lack of jurisdiction to allow intervention and dismiss this appeal on the theory that the district had no standing to appeal to the circuit court; and, further, that because the district had no standing to appeal to the circuit court, that court had no jurisdiction to entertain the appeal and its judgment on the appeal is void for lack of jurisdiction and will not support an appeal to the Supreme Court.

█ It does not appear that the district has been prejudiced by the Commission's action in limiting the district's intervention to the right of establishing by evidence the proximity of the district's lines to those of the company. That action of the Commission is not assigned for error. Nevertheless, it seems proper to observe that the statute provides that every person affected thereby may " . . . . intervene and become a party . . . . " to any proceeding before the Commission. Title 48, § 65.

The statute does not authorize any limitation on the right to intervene and become a party. With respect to intervention we find the following:

" . . . . Frequently, the statutes and rules of practice governing intervention expressly stipulate that intervention shall be in subordination to and in recognition of the propriety of the main proceeding, but aside from any such express declaration the rule is stated to be that one who intervenes in a pending action ordinarily must come into the case as it exists and conform to the pleadings as he finds them, or that he must take the case as he finds it. By this, it is generally meant that he cannot avail himself of or urge mere irregularities in the proceeding which the original parties have expressly or impliedly waived, or of defenses which are personal to them.

" . . . .

" . . . . It is practically impossible for a third person to intervene in a pending action without presenting questions of fact not involved in the pleadings of the original parties. It is sufficient ordinarily if the ultimate issue to be determined remains the same, and the fact that a new issue is presented by a petition for intervention does not require the denial of the petition. This does not mean, however, that one will be permitted to intervene in a suit, assume full control thereof, and oust the original plaintiffs from their control of it. Moreover, assuming that an intervener must accept the action pending as he finds it at the time of intervention, his rights thereafter are as broad as those of the other parties to the action. Having been permitted to become a party in order to better protect his interests, an intervener is allowed to set up his own affirmative cause or defense appropriate to the case and his intervention. . . . . " 39 Am.Jur. 950, 951, 952, Parties § 79.

In a case where one Franklin was denied the right to intervene, this court reversed. With respect to Franklin's right to intervene under Title 7, § 247, Code 1940, and his right to appear as a witness, this court said:

"It is urged that Ellis W. Franklin could give complete aid by appearing in the case as a witness. This is not correct. He is entitled under the statute to join in defense of the case. This means the right to appear in court as a party to the cause, with the rights and privileges pertaining thereto, which include the right to exception and appeal from adverse ruling. Dodd v. Reese, 216 Ind. 449, 24 N.E.2d 995, 128 A.L.R. 574." Franklin v. Dorsey-Jackson Chevrolet Co., 246 Ala. 245, 248, 20 So.2d 220, 223, 157 A.L.R. 154.

We will not pursue the argument on intervention further than to say that the district's right to "intervene and become a party" seems to be established by Title 48, § 65, and 278 Ala. 597, supra. We do not agree with the company's argument that we ought to dismiss for lack of the district's right to intervene.

### Consistency.

In the instant case, the Commission refused to impose a condition forbidding the company's use of the bond proceeds to duplicate the district's facilities without first obtaining authority from the Commission. In Alabama Power Company, 278 Ala. 597, 179 So.2d 725, supra, in a similar bond issue case, the Commission did impose such a restriction and this court affirmed. The district argues that the Commission's action in the instant case is inconsistent with the Commission's action in *Alabama Power Company,* supra, and ought not to be permitted under the rule that has been expressed as follows:

"Consistency in administrative rulings is essential, for to adopt different standards for similar situations is to act arbitrarily. Under such circumstances, affirmative orders violate administrative discretion and become punitive, rather than remedial measures, outside the scope

of the Board's power. . . . ." National Labor Relations Board v. Mall Tool Co., 7 Cir., 119 F.2d 700, 702.

" . . . . The doctrine of stare decisis does not apply to decisions of administrative bodies such as the Communications Commission, but radical departures from administrative interpretation consistently followed cannot be made except for most cogent reasons. Indeed it has been said that the adoption by an administrative agency of different standards for similar situations amounts to acting arbitrarily." WOKO, Inc. v. Federal Communications Commission, 80 U.S. App.D.C. 333, 153 F.2d 623, 631.

See: Secretary of Agriculture of United States v. United States, 347 U.S. 645, 74 S.Ct. 826, 98 L.Ed. 1015; and Fribourg Navigation Co. v. Commissioner, 383 U.S. 272, 86 S.Ct. 862, 15 L.Ed.2d 751.

■■ We agree that it is essential that administrative rulings be consistent and that a radical departure from established interpretation and practice cannot be made except for compelling reasons. To act in one manner in one case and the opposite manner in another case, where the circumstances are the same in all material respects, would be to act arbitrarily or, at best, unreasonably.

■ The question presented is whether the Commission's action in the instant case constitutes such a radical departure from the Commission's action in *Alabama Power Company,* supra, as to be inconsistent and arbitrary.

The order in *Alabama Power Company,* supra, was that:

" ' . . . . No portion of the funds . . . . shall be used by petitioner for . . . . new construction of . . . . lines *without the approval of this Commission,* where such new construction duplicates the electric service of the intervenors . . . . ' " (Emphasis Supplied) (278 Ala. at 600, 179 So.2d at 727)

In the instant case, the order is:

"6. That the intervenor may . . . . hereafter file with this Commission such petitions for relief as it (the district) may deem . . . . proper, then and there to be heard in the usual course . . . . " (Parenthesis Supplied)

In both cases, the intervenor sought protection against use of bond proceeds by the competitor to duplicate intervenor's facilities and take over intervenor's customers. In *Alabama Power Company,* the Commission granted relief by forbidding use of the funds to duplicate intervenor's facilities without first obtaining the Commission's approval. In the instant case, the Commission granted relief by permitting intervenor to proceed further before the Commission against the competitor's use of the funds to duplicate intervenor's facilities.

In both cases, further action by the Commission is contemplated in the event the competitor seeks to use the funds to duplicate intervenor's facilities. In both cases, the order contemplates further contest before the Commission if the competitor seeks to use the money for duplication. Relief is granted to intervenor in both cases. The relief is different in one respect. In *Alabama Power Company,* the burden of initiating proceedings to contest the duplication is placed on the party issuing bonds; in the instant case, that burden is placed on the other party, the intervenor. Does placing this burden of initiating the contest on the intervenor make the Commission's action inconsistent and arbitrary?

The functioning of a gas company and an electric power company are similar in some respects, different in others. The proposed uses of the bond proceeds in *Alabama Power Company* and in the instant case are the same in the respect that new construction and facilities are to be paid for by bond proceeds in both cases. There are, however, some differences. In *Alabama Power Company,* all the bond proceeds, $16,000,000.00, were to be so used "to provide funds for acquiring or con-

structing plants, properties, permanent improvements, extensions or additions to be used in its public utility business." (278 Ala. at 600, 179 So.2d at 726–727)

In the instant case, the bond proceeds will be $2,000,000.00 and a substantial part, more than half as we understand it, will be used to refund bonds and pay debts, leaving substantially less than $1,000,000.00 available to construct new facilities.

With some logic, perhaps, it may be argued that the intervenor here is entitled to the same relief as the intervenor in *Alabama Power Company*. There is, however, so far as we are advised, no statute which requires the Commission to order, in every utility bond issue proceeding, that none of the bond proceeds shall be used to duplicate the facilities of an affected intervenor without first obtaining permission of the Commission. There is no statute or decision of this court of which we know that forbids one utility from rendering service to a new customer who has previously been the customer of another competing utility. We know of no allocation of territory outside incorporated municipalities so that a line can be drawn on the ground which a competitor absolutely may not cross under any circumstances. These considerations we state, not as laying down rules of law, but as proper to be considered by the Commission and by this court in undertaking to decide questions presented by the contests of competing suppliers of services as in the instant case.

We conclude that the difference in the relief granted in *Alabama Power Company* and in the instant case is not so radical and unreasonable as to amount to inconsistency and arbitrariness. In both cases, the intervenor is free to contest the action of the competitor who seeks to duplicate intervenor's facilities and take its customers. When the intervenor is given this right to contest, we are not persuaded that we should lay down a rule that in all bond issue cases, where a contiguous and competing utility intervenes, the Commission must impose the same condition it imposed in *Alabama Power Company*.

In the instant case, the action of the Commission is not that of granting relief in one case and denying relief in a similar case. The Commission's order gives the district an option to file petitions and present additional evidence to support the charge that the company proposes to duplicate the district's facilities. In its brief the district says the cause should be ". . . . remanded to the Commission for the purpose of amplifying the record as to the distinction between transmission lines and distribution lines . . . . the distinction between what is and what is not an ordinary extension in the usual course of business. . . . . ." or, in the alternative, that the cause should be remanded with instructions to impose the restriction prayed for by the district.

The Commission's order appears to us to grant the first alternative, that is, to give the district opportunity to present further evidence to support its charge of duplication. We must assume that on hearing further evidence the Commission will make appropriate orders. We do not think that the district is entitled to the second alternative as a matter of law.

We are of opinion and hold that the order of the Commission is not unreasonable or arbitrary and that it was affirmed by the circuit court without error.

Affirmed.

SIMPSON, MERRILL, BLOODWORTH and MADDOX, JJ., concur.