207 So.2d 418

**SERVICE EXPRESS, INC. et al.**

v.

**BAGGETT TRANSPORTATION COM-
PANY et al.**

3 Div. 285.

Supreme Court of Alabama.

Jan. 11, 1968.

Rehearing Denied March 7, 1968.

Wright & Long, Montgomery, for Service Express, Inc.

MacDonald Gallion, Atty. Gen., and Robt. P. Bradley, Asst. Atty. Gen., for Alabama Public Service Commission.

Bishop & Carlton, Birmingham, for appellees.

HARWOOD, Justice.

This is an appeal from a decree of the Circuit Court of Montgomery County, in Equity, vacating an order of the Alabama Public Service Commission granting to Service Express, Inc., an enlargement of its operating rights under a certificate of necessity and convenience held by Service, wherein Service Express was granted authority to engage in operations as a common carrier by motor vehicle in the intrastate transportation of general commodities, except commodities in bulk in tank vehicles, over irregular routes between all points within a radius of seventy-five miles of Tuscaloosa, Alabama.

The effect of this order was to remove the restriction on the certificate of convenience and necessity of Service Express that shipments of commodities within the seventy-five mile radius of Tuscaloosa had to originate or terminate in Tuscaloosa.

Included in this appeal also is an appeal from the order and judgment of the lower court denying Service's motion for a rehearing timely following the original judgment and decree of the lower court.

The Circuit Court found:

"Fundamentally and basically, however, the evidence in this case does not support the purported ground of author-ity, and the subject Report and Order is based upon a finding of facts contrary to the substantial weight of the evidence."

The court also found that the application had been referred to an examiner for hearing, but that no written report was filed by the examiner and that it does not appear from the record that all of the Commissioners were present throughout the hearing, or that the matter was ever considered at any meeting of the Commission.

The order granting the application of Service was signed by Commissioners Pool and Pepper, with Commissioner Conner dissenting on the grounds that:

"The evidence shows that the territory sought to be served is adequately served by other carriers and this record does not show the existence of any public convenience and necessity. Therefore I would deny the application."

The certificate of convenience and necessity herein involved was obtained by a predecessor of Service and authorized the transportation of:

"General Commodities:

"Between Tuscaloosa and all points within a radius of 75 miles of Tuscaloosa."

The certificate was originally held by Red Top Transfer Co., Inc., and was transferred by the Commission to Buford Willis, doing business as Willis Transfer Company. It was then transferred from Buford Willis to Mae O. Willis, doing business as Willis Transfer Company. By an order dated 9 September 1963, the Commission recognized that Willis Transfer Company had adopted the name of Service Express, Inc.

Prior to the transfer of the certificate by Red Top Transfer Company to Buford Willis, it was subjected to construction and interpretation in the Circuit Court of Jefferson County, Alabama, in Equity. That court decreed that under the terms of the certificate Red Top could transport com-

modities within a radius of 75 miles of Tuscaloosa only when such commodities transported have Tuscaloosa, Alabama, as their point of origin or point of destination, and that Red Top was not authorized to transport commodities from Birmingham or any point within a radius of 75 miles of Tuscaloosa through Tuscaloosa and then on to any other point within a 75 mile radius of Tuscaloosa.

Thereafter on motion and complaint of Baggett Transportation Company that Mae O. Willis, doing business as Willis Transfer Company was disregarding the decree, she was ordered by the Commission to show cause why her operations should not be conducted in accordance with the decree.

After a hearing on this matter, the Commission entered an order that the records of the Commission be revised to accord with the decree of the Circuit Court and Mae O. Willis was directed to cease and desist any operations not in accord with said order.

Thereafter, the certificate was transferred by Mae O. Willis to Service Express Company.

Service Express later filed an application with the Commission seeking the same extension of its certificate as was sought in the present proceedings, but on the basis of the view of the chief attorney of the Commission that apparent operations beyond the scope of the certificate were insufficient to justify an extension of the certificate, this application was dismissed, and the present application was filed with the Commission.

John A. Finnell, Chief Expediter in the Birmingham office of the Rust Engineering Company, testified that his company is primarily engaged in construction work. It has recently built a mill for Marathon Southern Company at Naheola, Alabama, and will shortly build a paper plant at Selma, Alabama.

Those shipments in interstate not directly shipped to Naheola come to Birmingham and are there transported to Naheola by Hall Motor Company. Hall does not run a truck to Naheola until sufficient volume has accumulated and this sometimes results in a third or fourth morning delivery.

However, on cross examination by counsel representing the protesting carriers, Finnell could not give any specific instances concerning any shipments to Naheola. He further testified that the plant construction at Selma had not begun. Both Baggett Transportation Company and Mercury Freight Lines, Inc., have first morning service to Selma. From past experience with Baggett, its service has been satisfactory. However, Baggett has not been solicited for service between Birmingham and Naheola.

It was Mr. Finnell's theme that some industry might locate somewhere in Alabama and Rust might be the successful bidder, and, "I think we ought to have a little more competitive service."

Lonnie Davis, in charge of transportation activities for Marathon Southern located at Naheola, testified that his company very seldom had occasion to ship its products from Naheola to points within 75 mile radius of Tuscaloosa.

The main problem his company encounters on outbound shipments is "delays to the terminals and in connection with carriers going to market, the actual delivering time on merchandise in Eastern and Midwestern areas."

He testified as to one fourth day delivery of a piece of machinery by Hall Motor Company.

On cross examination, Davis testified that the only interest he had in the present application is shipments between Birmingham and Naheola. About 60 per cent of his company's inbound shipments move through the Birmingham gateway.

He has used mainly two carriers for shipments from Naheola to Birmingham,

Dixie Highway Express and Hall Motor Company.

Hall runs tri-weekly in and out of Naheola, supposedly Mondays, Wednesdays, and Fridays. With one exception, he could not specifically state any shipment by Hall when he had not received a two day service. The one delayed shipment from Naheola to Birmingham was handled by Dixie Highway Express. He has used Baggett one time within the past six months and their service was satisfactory.

When shown freight bills of Hall Motor Company showing 69 deliveries of freight to Naheola in November 1965, with no outbound shipments, Mr. Davis stated this did not necessarily mean that all outbound shipments that month had been given to Dixie Highway, but some could have been given to Campbell 66 out of Meridian, Mississippi.

Robert L. Graham, President of Southern Warehousing Company, testified that he had no "specifics" but that he did not get consistent service to all points in west Alabama, though in general the service had been satisfactory. It was Mr. Graham's view that "there are a lot of little towns in here we might have two or three shipments a year on. I am interested in seeing that they get overnight service."

Fred A. Deaver, Traffic Manager for Moore-Handley Hardware Company, a large wholesale hardware company, testified that inbound service to Birmingham from points within a 75 mile radius of Birmingham has generally been satisfactory.

He has experienced some trouble on outbound shipments fom Birmingham to Plantersville.

Moore-Handley has 134 tractor trailer units of its own and when they experience trouble they put on their own trucks.

Approximately 65 per cent of their outbound shipments are handled in their own trucks, and 10 per cent of their inbound shipments. However, Moore-Handley experiences trouble with their own transportation also.

Additional truck lines to those used by Moore-Handley operate into the territory under consideration.

The testimony of the shipper witnesses tends to show only infrequent delays in shipments in the territory under consideration. It also shows that even where these infrequent delays have occurred there were other carriers furnishing service in the territory.

■ The entire evidence tends to show adequate motor service to all territorial points involved in the application. The public witnesses testifying in support of the application seem to base their testimony upon the idea that if additional service is made available such service would on occasions be beneficial to their individual needs regardless of the economic feasibility of having such service available.

■ This application should have been denied by the Commission unless the evidence showed that the proposed service is or will be required by the present or future convenience and necessity. Section 301(9), Title 48, Code of Alabama 1940. "Necessity" as that word is used in the above mentioned code section means reasonably necessary for the *public* good. Alabama Public Service Commission v. Higginbotham, 256 Ala. 621, 56 So.2d 401.

In the opinion in Alabama Public Service Commission v. Perkins, 275 Ala. 1, 151 So.2d 627, the report of the examiner recommending against the granting of a certificate of convenience and necessity is set out. The following portion of the examiner's report is, we think, an illuminating statement of the legal principles and policies governing the Commission in the granting of certificates:

"The Commission, in its recent order issued under Docket No. 14747, said sound economic conditions in the transportation industry require that existing

motor carriers should normally have the right to transport all traffic they can handle adequately, efficiently and economically, in the territory they service without added competition of a new operation. Proof of public convenience and necessity requires an affirmative showing that the proposed operations are superior to those presently authorized carriers; or that the proposed operations will serve a useful purpose which cannot or will not be met by existing carriers. Under the requirement of proving public convenience and necessity, there must be an affirmative showing not only that a common carrier service is required, in the convenience of the public proposed to be served, but also that it is a necessity on the part of such public. The maintenance of sound economic conditions in the transportation industry would be jeopardized by allowing a new operator to enter a field of competition with existing carriers who are furnishing reasonable adequate service. The burden of proof is upon the applicant to establish that the public convenience and necessity requires the applicant's service and that the services of existing carriers are inadequate. A certificate should not be granted where there is existing adequate service over the routes applied for, and if adequate unless the existing carrier had been given an opportunity to furnish such additional service as may be required."

Without indulging any favorable presumptions in favor of that part of the lower court's decree finding that the Report and Order of the Commission was contrary to the substantial weight of the evidence, and that the evidence did not warrant the Report and Order, we are in accord with such conclusion after careful consideration of this record.

Being of this conclusion, we see no need to consider appellant's second point that there was no evidence to support the court's

findings that an examiner had been appointed to hear this application, and that the order had been issued by two commissioners prior to any written report by the examiner, or any meeting of the Commission to consider the application. See Alabama Public Service Commission v. Redwing Carriers, Inc., 281 Ala.Sup. 111, 199 So.2d 653.

Affirmed.

LAWSON, SIMPSON and MERRILL, JJ., concur.