326 So.2d 283

**ALABAMA PUBLIC SERVICE COMMISSION et al.**

**v.**

**COOPER TRANSFER COMPANY, INC.,**
a corporation, et al.

**SC 1173.**

Supreme Court of Alabama.

Dec. 18, 1975.

Rehearing Denied Feb. 5, 1976.

**210**

---

Carl L. Evans, Montgomery, for Alabama Public Service Commission.

Charles A. Powell, III, Birmingham, for Baggett Transportation Co.

Maurice F. Bishop and Gerald D. Colvin, Jr., Birmingham, for Floyd & Beasley Transfer Co., Inc., Bowman Transportation, Inc., Georgia-Florida-Alabama Transportation Co., Hiller Truck Lines, Inc., North Alabama Express, Inc. and Bee-Line Express.

R. S. Richard, Montgomery, for Ross Neely Express, Inc., Birmingham-Nashville Express, Inc., and Hornady Bros. Truck Line.

Samuel Kaufman, Montgomery, for Trustee of A–OK Motor Lines, Inc.

Euel A. Screws, Jr., Montgomery, for Mason and Dixon Lines, Inc.

Robert C. Black, Montgomery, for Reliable Truck Lines, Inc. and Gordons Transports, Inc.

J. Douglas Harris, Montgomery, for Cooper Transfer Co., Inc.

**212**

EMBRY, Justice.

Appeal from judgment of the Circuit Court of Covington County reversing an order of the Alabama Public Service Commission (APSC). That order of APSC denied approval of the transfer of the rights under the intrastate Certificate of Authority of A–OK Motor Lines, Inc., a bankrupt carrier of freight by motor truck. The applicants seeking approval of the transfer of A–OK's authority were the Trustee In Bankruptcy of A–OK Motor Lines, The Mason and Dixon Lines, Inc., Cooper Transfer Company, Inc., Gordons Transports, Inc., and Reliable Truck Lines, Inc. Mason and Dixon sought approval to purchase A–OK's regular route authority. Reliable Cooper and Gordons each sought approval to purchase a portion of A–OK's irregular route authority.

The applications for approval of the sale of A–OK's authority were protested by eleven carriers: Ross Nelly Express, Inc., Birmingham-Nashville Express, Inc., Central Motor Express, Hornady Brothers Truck Line, Floyd & Beasley Transfer Co., Inc., Bowman Transportation, Inc., Georgia-Florida-Alabama Transportation Co., Inc., Hiller Truck Lines, Inc., North Alabama Express, Inc., Bee Line Express, and Baggett Transportation Company.

Following a consolidated hearing, APSC denied approval of the transfer applications as not consistent with the public interest. See Code of Ala., Tit. 48, § 301(15). The applicants perfected an appeal to the Circuit Court of Covington County. That court found that APSC erred to the prejudice of applicants' substantial rights in its application of law to the facts and the findings of APSC were not based on substantial evidence. Accordingly, the court entered its judgment setting aside the order of the Commission and remanding the case to APSC with directions that the Commission grant approval of the applications for sale and transfer of A–OK's authority. The court further ordered that costs be taxed against the protestants. We reverse and remand with directions.

The following definitions may be helpful:

ROUTE: Particular road or highway, or series of roads or highways, over which a carrier is authorized by APSC to operate its vehicles between terminal points.

REGULAR ROUTE AUTHORITY: Authority to carry goods in a scheduled operation over a restricted and defined route.

IRREGULAR ROUTE AUTHORITY: Authority to carry goods in an unscheduled operation within a restricted territory but wholly unrestricted as to route. Carriage under radial authority means carriage to or from a base point to or from any point in the restricted territory. Non radial authority means carriage from or to any point in the restricted area without reference to the base point.

TACKING: Operation by a carrier between two or more of its regular routes or between irregular and regular routes in order to reach a point which could not legally be served by operation over any single irregular or regular route or combination of regular routes. It is the joinder of separate grants of authority at a point common to both.

POINTS: Those locations a carrier is authorized to carry goods to or from.

AUTHORITY: The grant of rights to carry goods between points or within a restricted area.

The facts: During 1969 A–OK began experiencing severe financial difficulty

with a resultant decline in the quality of service. On 17 November 1970, A–OK was declared bankrupt. The Trustee In Bankruptcy did not continue A–OK's operations as a carrier. After marshalling the assets of A–OK, the Trustee determined that its most valuable asset was the certificate of authority for regular and irregular intrastate routes in Alabama. The Trustee invited bids from interested carriers to purchase A–OK's certificate. The Trustee selected a group of the highest bidders and entered into further negotiations with them. The result of these negotiations were separate contracts with the four applicants to purchase the rights of A–OK under its certificate as described before. The contracts were conditioned upon APSC approval of the sale.

The pertinent portion of the APSC's order which denied approval is as follows:

"A–OK ceased operations contemporaneously with its bankruptcy and, while he may have had the authority to continue or re-open operations under the A–OK certificate, the Trustee in Bankruptcy did not do so. Thus, at the time of the hearing, there had been no service rendered under the A–OK authority in over 16 months and it is now almost two years that the rights sought to be transferred have been inactive. There was also evidence to the effect that from 1969 to actual bankruptcy that the operations of A–OK were declining and at times were sporadic.

"While the applicants sponsored several shipper witnesses, it is abundantly clear from the record before us, and we find as a fact that during this extended hiatus in operations, the protestants have successfully filled the void created by the demise of A–OK. For example, the protestant Hornady Brothers, subsequent to the A–OK bankruptcy, came before this Commission seeking to obtain authority to operate between several points formerly served by A–OK. That application was not opposed by the Trustee in Bankruptcy for A–OK, and the evidence presented to this Commission in that proceeding showed that the public convenience and necessity required the granting of the authority sought by protestant Hornady (see Certificate No. 647). If these sales and transfers are approved as sought, from the evidence it appears that the protestant Hornady Brothers could be put out of business. As another example, we note that one of the witnesses offered by the applicants, Roy Nelson, President of Towns Express, testified that his small cartage operation would be destroyed by the introduction of the applicant Gordons into the area which he services whereas he could compete successfully with A–OK. Not only has the void been filled, it is crystal clear, and we find as a fact, that the various protestants are rendering prompt, efficient service to that portion of the shipping public formerly served by A–OK. The record further establishes that the quality of service now being rendered in the areas formerly served by A–OK is better than that provided by A–OK in the last year of its existence. While several of the witnesses sponsored by the applicants indicated that they would like to have an additional carrier available to them, none of them were without reasonable service. Thus, if this were a case of determining whether to initially grant a new authority there would be no question but that it should be denied. We are, however, dealing with a transfer case governed by Section 301(15) and our determination therefore must be on the basis of whether the transfer is 'consistent with the public interest.'

"It can be argued that we could, on the basis of substantial authorities, find that these rights are dormant and not available for transfer in any event. We are mindful of the large number of creditors who would be adversely affected by such a ruling. If these rights are again offered for sale in a form consistent with the spirit of this order and the public interest, and if such sales are approved by this Commission, a substantial sum would thereby be realized by the creditors of A–OK from

such sale. A number of the major protestants stated, on the record, that they would not object to the transfer of all of the A–OK authorities to one purchaser, or to the transfer of the A–OK irregular route authorities to one transferee and its regular route authorities to another. It is to be noted that the Trustee in Bankruptcy testified that the authorities sought to be transferred could be transferred as suggested by some of the protestants at a minimal differential to the creditors. While we are neither unmindful nor unsympathetic with the expressed interest of the Trustee to maximize the return to the creditors, we are, in this proceeding, charged with the duty of protecting the interests of the public, including the continuing shipping needs of these creditors, the carriers now serving them and the public at large.

"There are a number of reasons why we find the proposed transfers would not be consistent with the public interest, but chief among them is the fact that the transfers as proposed, if approved, would result in four distinct new operations replacing one arguably dormant operation with the injection of four vigorously competitive carriers into markets adequately served by protestants.

"The record establishes, and we so find, that when the proposed division of this authority is considered in conjunction with the authorities presently held by the applicants, and the tacking that would be possible, we are not being asked to approve the revival of the A–OK's rights but to approve a major readjustment of the transportation industry of Alabama. Based on the record before us, we find that the applicants have failed to establish that it is in the public interest to approve the transfers as proposed. These applications have been presented as a 'package' and as we understand the applications, we must approve or disapprove of the transfers as a group.

"The record is clear, and we find that the granting of the applications would tend to seriously impair the ability of the carriers presently serving the former A–OK areas to continue to render satisfactory service. The exhibits and testimony offered by protestants, and the testimony elicited on cross-examination of some carrier witnesses discloses that while the intrastate traffic here involved is not the primary concern to the applicants the probably (sic) diversion of a portion of that traffic would be detrimental to the protestants and in turn the public interest in a sound transportation system. This is not to say that we would deny or approve the transfer of these rights in toto to a single applicant, but that case is not before us. Taking into consideration the full import of splitting this certificate into four certificates and the duplication of authorities and points that would result from the granting of the transfers as proposed, we are compelled to find that the applications are due to be denied as not being consistent with the public interest."

The issues for decision are: (1) Were the applications a "package deal" which APSC had to accept or reject in its entirety? (2) Were the findings of fact in the order of APSC contrary to the substantial weight of the evidence, or did APSC err to the prejudice of the applicants' substantial rights in its application of law to the facts.

Before turning to the issues, we note that our standards for review of an order of the APSC are well settled. *See State v. Alabama Public Service Commission*, 293 Ala. 533, 307 So.2d 521 (1975), and cases cited therein. Succinctly stated, those standards are: an order of APSC is reviewed with a presumption that it is prima facie just and reasonable; will not be overturned unless based upon

*findings of fact contrary to the substantial weight of the evidence, or unless it is shown that APSC erred to the prejudice of the contesting parties substantial rights in its application of the law to the facts.*

Presumptions are indulged in favor of the orders of APSC because the legislature has committed to APSC matters of vast public interest requiring its special administrative expertise. *See Fraternal Order of Police, Strawberry Lodge # 40 v. Entrekin*, 294 Ala. 201, 314 So.2d 663 (1975). Therefore we review the Commission's order as though it had been appealed directly to this court, and do not review the judgment of the Circuit Court with any presumption of correctness. *Alabama Gas Corporation v. Wallace*, 293 Ala. 594, 308 So.2d 674 (1975). We are fully committed to the propositions that the courts of this State must not substitute their own judgments or findings of fact for the judgment of the Commission.

### Issue (1) : A "Package Deal?"

■ The Commission found that the applications were presented as a "package" which it had to either approve or disapprove in its entirety.

The contentions of the various parties to this litigation are found in six briefs and three appendices to one of those briefs, containing an aggregate of three hundred pages. Much·of the argument of each of the parties' litigant is misdirected from the key issue which, simply stated, is: was there "substantial" evidence when considered most favorable to upholding the Order of APSC tends to support the action of APSC reflected in that Order?

All applicants contend the Commission should have considered each of their applications separately. Applicants point out that each sought approval to purchase parts of the rights under the Certificate Of Authority of A–OK based on a separate contract made with the Trustee In Bankruptcy. Applicants also note that each application was treated separately although consolidated for hearing.

In separate brief applicant Mason and Dixon contends the Commission should have given completely separate consideration to its application and approved same because: (1) Mason and Dixon sought to purchase all of A–OK's regular route authority, (2) The Commission order expressly stated it would approve transfer of the regular route authority to one carrier, (3) Protestants admitted they would not protest transfer of the regular route authority to one carrier.

The Order of the Commission is supported by substantial evidence in the record. The record has been carefully examined. It consists of 2,109 pages, in 12 volumes, having a weight of 59 pounds avoirdupois. It shows the four separate contracts were the result of a single negotiation with the Trustee In Bankruptcy of A–OK. The Trustee's testimony indicates the decision to contract with the four carriers was arrived at only after he considered the total effect of the four contracts on the Alabama Transportation Industry. The record also shows the Trustee entered into those contracts based on *his view* that the agreed division of A–OK's rights would be acceptable to APSC. Moreover, while the Commission indicated it would approve transfer of the regular route authority to one carrier, it did not indicate it would approve transfer of such authority to Mason and Dixon. There was no prejudice to Mason and Dixon nor any other applicant. Reversible error cannot be predicated upon the Commission's judgment to consider the applications as a "package."

### Issue (2) : Substantial Weight of the Evidence

■ Applicants argue the Commission's decision finding the proposed transfer of authority not to be in the public interest is not supported by the substantial weight of the evidence. Applicants contend the record shows only that protestants *fear* new competition and possible diversion of intrastate traffic. This fear, applicants assert, is legally insufficient to support a finding

that approval of the applications is not in the public interest. *See Alabama Public Service Commission v. Chem-Haulers, Inc.,* 293 Ala. 677, 309 So.2d 453 (1975). Applicants further note that although the *public interest* test includes consideration of the effect of new competition on existing carriers, nevertheless the record here conclusively demonstrates that any competitive effect that might result from approval of the applications is so negligible that no protestant could be harmed.

These arguments take a very narrow view of a multifaceted Commission order. That order affirmatively shows that disapproval of the applications was not based solely on findings of diversion or competitive effect. The Commission found that approval of the applications would result in a major restructuring of Alabama's Transportation Industry. This finding was based on considerations of diversion, competitive effect, and an implicit factor; dividing A–OK's authority under its certificate in the manner requested would result in applicant carriers being allowed to dramatically increase the areas those carriers could serve directly or indirectly. There is substantial evidence in the record of the proceedings before the Commission which supports the finding that such a restructuring would occur. The Commission's order indicates that various factors, including creditors' interests, *Floyd & Beasley Transfer Co., Inc. v. Alabama Public Service Commission,* 276 Ala. 130, 159 So.2d 833 (1963), entered into its judgment that the proposed transfers would not be in the public interest. On this record we cannot say the decision of the Commission is not supported by substantial evidence or that the Commission erred to the prejudice of the applicants' substantial rights when it decided the proposed transfers would not be in the public interest.

The judgment of the Circuit Court of Covington County is reversed. We remand with directions that an order affirming the order of the Alabama Public Service Commission and allowing costs to protestants be entered.

Reversed and remanded with directions.

BLOODWORTH, MADDOX, FAULKNER and ALMON, JJ., concur.