56 So.2d 401

## ALABAMA PUBLIC SERVICE COMMISSION v. HIGGINBOTHAM.

6 Div. 141.

Supreme Court of Alabama.

Oct. 18, 1951.

Rehearing Denied Jan. 31, 1952.

A. A. Carmichael, Atty. Gen., and Thos. F. Parker, Asst. Atty. Gen., and Albert Boutwell, Birmingham, for appellant.

Gibson & Hewitt, Birmingham, for appellee.

LAWSON, Justice.

The New Deal Riding Club filed its application with the Alabama Public Service Commission for a certificate of public convenience and necessity to operate as a common carrier of passengers between Dixiana and Bradford Mine, a distance of approximately six miles, over an unnumbered county road in Jefferson County. Notice of the hearing to be held on the application was given to Alton C. Higginbotham, among others. Higginbotham already held a certificate of public convenience and necessity to operate as a common carrier of passengers over the same route.

The application came on for hearing before the Commission on evidence taken before examiners. Higginbotham appeared at the hearing and opposed the granting of

the certificate. Thereafter the Commission made the following order:

"New Deal Riding Club,
Applicant.

Certificate of Public Convenience and Necessity No. 2164.

"Upon consideration of the record in the above docket numbered case, and the law applicable thereto, and the rules established under said law, the Commission finds and decides that this Order should be issued; now, therefore, it is

"Ordered: That Motor Carrier Certificate of Public Convenience and Necessity No. 2164, be and it is hereby issued to New Deal Riding Club, authorizing operation as a common carrier by motor vehicle of passengers and their baggage over regular route. Between Dixiana, Alabama, and Bradford Mine, over unnumbered county road.

*"Restriction: Only 'Club Members' To Be Transported.*

"This certificate is issued under and subject to the provisions of Alabama Motor Carrier Act of 1939 and the requirements, rules, and regulations of this Commission thereunder; and the authority herein contained shall be held and exercised subject to the requirements and provisions of said Act laws, now or hereafter enacted, applicable to such authority or operations thereunder.

"This certificate is effective as of the date of this order, and shall remain in force and effect until amended, suspended or revoked by order of this Commission.
"Done at Montgomery, Alabama, this the 16th day of March, 1950."

From this order Higginbotham appealed to the circuit court of Jefferson County, in equity. The appeal was considered in the circuit court on the certified transcript of the proceedings before the Commission. Upon consideration of the cause upon appeal, the circuit court by decree rendered, set aside the order of the Commission, and annulled and set aside the certificate of public convenience and necessity theretofore issued by the Commission to the New Deal Riding Club.

From the decree of the circuit court of Jefferson County, in equity, the Commission has prosecuted an appeal to this court.

The Commission's authority to issue certificates of public convenience and necessity to operate as a common carrier is provided by § 301(9), Title 48, Code 1940, Cum. Pocket Part, which provides in pertinent part as follows: "A. Subject to the provisions * * * of paragraph B of this section, a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found, after public hearing of the application, that the applicant is fit, willing, and able to properly perform the service proposed and to conform with the provisions of this article and requirements, rules and regulations of the commission thereunder, and that the proposed service, to the extent thereby authorized by the certificate is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied; * * * B. Before granting a certificate to a common carrier by motor vehicle the commission shall, among other things, consider the following: (1) Whether existing transportation service of all kinds is adequate to meet the reasonable public needs. (2) Financial ability of the applicant to furnish adequate, continuous and uninterrupted service the year around. (3) The advantages to the public of the proposed service. * * *"

In North Alabama Motor Express, Inc., v. Rookis, 244 Ala. 137, 12 So.2d 183, wherein was involved the action of the Alabama Public Service Commission in granting a certificate of convenience and necessity to engage in the business of a common carrier, after a hearing, we observed, among other things, as follows: (1) The granting of a franchise as here involved is both quasi legislative and quasi judicial; (2) the present and future public need in the matter of transportation is the major inquiry which calls for conclusions of fact upon evidence heard by special tribunal set up as a permanent body to deal with the problems involved; (3) the Commission may receive

and consider evidence shedding some light on the issue, although not admissible under general rules of evidence; (4) but there must be some evidence which is competent and legal, as treated by the usual rules for the producing of evidence in any legal proceeding to sustain the finding.

In Alabama Public Service Commission v. Crow, 247 Ala. 120, 22 So.2d 721, we said in part as follows: (1) The word "necessity" is not used in § 301(9), Title 48, Code 1940, Cum. Pocket Part, in the sense of being essential or absolutely indispensable, but merely that the certificate is reasonably necessary for the public good; (2) in considering the question of public need, the Commission must, of course, take into consideration the fact that the territory is served by other carriers and the adequacy of such service to meet the public need.

Appeals from final action or orders of the Commission on applications of the character here involved are provided for by § 301(27), Title 48, Code 1940, Cum. Pocket Part, which section reads as follows: "From any final action or order of the commission in the exercise of the jurisdiction, power, authority, conferred upon the commission by this article, an appeal shall lie to the circuit court of the county of the carrier's residence, or in which he has his principal place of business or to the circuit court of Montgomery County, Alabama, sitting in equity, and thence to the supreme court of Alabama. Such appeals must be taken within thirty days after the date of such final action or order, *and such appeals and the supersedeas and stay of action or order appealed from in other respects shall be governed by the provisions of the law now in force, or hereafter enacted, respecting appeals in other cases from the final order and actions of the commission."* (Emphasis supplied.)

It appears that the appeal in this case was properly taken to the circuit court of Jefferson County, in equity. It is not contended to the contrary.

█ The contention is made that the appeal was not properly taken in that there was no application for reconsideration or rehearing of the order granting the cer-

tificate, as may be made under subdiv. 9 of § 301(5), Title 48, Code 1940, Cum. Pocket Part. The contention is without merit, aside from any consideration of the question as to whether the point is properly presented here. The case of Alabama Public Service Commission v. Alabama Power Co., 213 Ala. 374, 104 So. 814, holds in effect that if the appeal is duly filed it may be taken from either the original action or order of the Commission or from its action or order on reconsideration or rehearing.

The italicized portion of § 301(27), Title 48, supra, makes applicable § 82, Title 48, Code 1940. North Alabama Motor Express, Inc., v. Rookis, supra; Alabama Public Service Commission et al. v. Crow, supra; Alabama Public Service Commission v. Nunis, 252 Ala. 30, 39 So.2d 409.

Section 82, Title 48, Code 1940, provides in pertinent part: "The commission's order shall be taken as prima facie just and reasonable. No new or additional evidence may be introduced in the circuit court except as to fraud or misconduct of some person engaged in the administration of this title and affecting the order, ruling or award appealed from, but the court shall otherwise hear the case upon the certified record and shall set aside the order if the court finds that: the commission erred to the prejudice of appellant's substantial rights in its application of the law; or, the order, decision or award was procured by fraud or was based upon a finding of facts contrary to the substantial weight of the evidence. * * *"

In regard to the review by the circuit court of an order of the Commission under § 82, Title 48, supra, we said in North Alabama Motor Express, Inc., v. Rookis, supra [244 Ala. 137, 12 So.2d 185], as follows: (1) "Section 82, construed as a whole and in the light of well-established principles, means the finding of the Commission will not be overturned if supported by legal evidence of substantial weight and probative force"; (2) "capable, understanding men, free from all interest save the performance of public duty, weighing evidence in the light of experience, is the set-up contemplated by law. Courts should not

626

and do not overturn their findings save upon a clear conviction that their orders are wrong and unjust"; (3) "the order of the Commission is not to be vacated on appeal because of the admission of evidence not legally admissible under technical rules upon the trial of causes before juries"; (4) " 'substantial evidence,' as used in Section 82, supra, means legal evidence."

In Alabama Public Service Commission v. Nunis, supra, we held in effect that in order for the courts to set aside the order of the Commission on the ground that it was based upon a finding of facts contrary to the substantial weight of the evidence, a sufficient finding of facts must be made by the Commission.

The right of appeal to this court from the judgment or decree of the circuit court, in equity, is given by § 90, Title 48, Code 1940. Alabama Public Service Commission v. Avery Freight Lines, Inc., 254 Ala. 672, 49 So.2d 170; Alabama Public Service Commission v. Nunis, supra. In regard to the review by this court, we said in Alabama Public Service Commission v. Nunis, supra, 252 Ala. 34, 39 So.2d 412: "On appeal to this Court, we must review the judgment of the circuit court without any presumption of its correctness, since that court was in no better position to review the order of the Commission than we are. Title 13, section 17, par. 1, Code 1940. The evidence was not taken before the trial judge in the circuit court. Green v. Green, 249 Ala. 150, 30 So.2d 905. We are governed by the same rules in our review as was the circuit court. So that we will review the order of the commission as though the appeal from the commission's order had been directly and primarily to this Court. * * *"

■ As above shown, the review of the order of the Commission is on the record or transcript of the proceedings before the Commission, certified in accordance with the requirements of § 83, Title 48, Code 1940. No question of fraud or misconduct being involved, the order of the Commission in this case could be set aside only on a finding that (1) "the Commission erred to the prejudice of appellant's [Higgin-botham's] substantial rights in its application of the law," or (2), that the order of the Commission "was based upon a finding of facts contrary to the substantial weight of the evidence."

■ There was no finding of facts made by the Commission. The order appealed from does contain the following language: "Upon consideration of the record in the above docket numbered case, and the law applicable thereto, and the rules established under said law, the Commission finds and decides that this order should be issued * * *." That is a finding that the order should be issued, an application of the law to the facts as presented before the examiners, but it is not a finding from conflicting evidence that certain specified factual situations were shown to exist. It is not a sufficient finding of facts to justify a review on appeal as to whether the order was based on a finding of facts contrary to the substantial weight of the evidence. Hence that question was not before the trial court, nor is it before this court. Alabama Public Service Commission v. Nunis, supra.

■ It follows, therefore, that the only ground left upon which the order of the Commission might be set aside is on the finding that "the Commission erred to the prejudice of appellant's substantial rights in its application of the law." The question arises as to what is meant by the words "application of the law." We think they mean application of the law to the facts. But such construction poses the further inquiry as to whether the courts can review the question of whether the Commission erred to the prejudice of appellant's substantial rights in its application of the law to the facts under our holding in Alabama Public Service Commission v. Nunis, supra, since the Commission made no finding of facts.

In the Nunis case, supra, after holding that a finding of facts was necessary to judicial review as to the weight of the evidence, we said:

" * * * The commission expressed the opinion upon a consideration of all the evidence, and found that there were sufficient

carriers qualified with it to transport the petroleum products as outlined in the application, 'and that the issuance of another permit would not be consistent with the public interest and that said application should be denied.'

"We think that is such a finding of facts as to show the basis on which the order by the commission was made so as to determine whether the commission erred in its application of the law, or whether its order was contrary to the substantial weight of the evidence, meaning whether it is supported by legal evidence of substantial weight and probative force. We think the finding of the commission in this respect complied with its statutory duty in regard to such finding. We are then remitted to the question of whether there was a misapplication of the law, or its finding was not properly supported by the evidence."

It is possible that the language just above quoted is susceptible of the construction that we were of the opinion that a finding of facts was necessary to judicial review of the question of whether or not there was a misapplication of the law by the Commission. We did not intend to so hold. Nor is the Nunis case, supra, to be construed as holding that where there is no finding of facts, the court on appeal may not determine from the evidence whether the order was just and reasonable and, therefore, whether it was confiscatory as taking property without due process. But upon such consideration, the presumption is prima facie that the order was just and reasonable.

The finding of facts is a different concept from the judicial function of applying the law to those facts. Alabama Public Service Commission v. Nunis, supra.

Since there was no finding of facts by the Commission, in considering the question of whether the Commission erred in applying the law to the facts, we must consider the evidence in the light most favorable to the upholding of the order of the Commission, and without weighing the conflicting evidence. In other words, we do not weigh the conflicts in the evidence, but accept as true those tendencies of the evidence and the reasonable inferences to be drawn therefrom which tend to support the action taken by the Commission.

Before treating the facts, we refer again to certain aspects of the law. The application should have been denied by the Commission unless the evidence showed that the proposed service is or will be required by the present or future convenience and necessity. § 301(9), Title 48, Code 1940, Cum. Pocket Part. As before pointed out, "necessity," as that word is used in § 301(9), Title 48, supra, means that the certificate is reasonably necessary for the public good. And, in arriving at its decision, the Commission should have considered, among other things, whether existing transportation service of all kinds is adequate to meet the reasonable public needs and the advantages to the public of the proposed service. § 301(9), Title 48, supra.

With these rules in mind, we come to consider the evidence in the light most favorable to the action taken by the Commission.

The Alabama By-Products Company is engaged in the coal mining business in Jefferson County near Dixiana, where it operates the Bradford mine. For a number of years the portal to the mine was located very near Dixiana, where the Company maintained separate camps for white and colored miners. As mining operations progressed, it was necessary for the miners to walk a long distance underground from the portal at Dixiana to reach the place where mining operations were performed. Consequently, the Company made a new opening or portal to the mine at a point approximately six miles distant from Dixiana. The Company did not furnish transportation for the miners from the camps to the portal. Therefore, it was incumbent upon the miners to make some arrangement for their transportation. A club of approximately eighty-six colored miners formed what is called the New Deal Riding Club. This club purchased two rather old busses, which were used in transporting the members of the club to and from the camp to

the portal of the mine. Each member was charged the sum of thirty-five cents per day for such transportation, which money was deducted from his compensation by the company and turned over by the company to the union, which in turn delivered it to the club. Alton C. Higginbotham also secured equipment for the purpose of transporting miners from the camp to the portal of the mine. He was paid in the same manner as was the so-called New Deal Riding Club. When these operations first began, neither the New Deal Riding Club nor Higginbotham obtained a certificate of public convenience and necessity from the Alabama Public Service Commission.

However, within a comparatively short time Higginbotham applied for and was granted a certificate of public convenience and necessity to operate as a common carrier of passengers between the camp and the mine, being limited by his permit to the transportation of miners. It is without dispute in the evidence that Higginbotham secured two new busses which are entirely adequate in every respect for the purpose of transporting all white and colored miners. One bus carries the white miners, the other transports such colored miners as will ride in Higginbotham's bus. The evidence shows that the majority of the miners are colored and that Higginbotham had been transporting approximately twenty white miners in one bus, and at the time of the hearing of this application made by the New Deal Riding Club, he was transporting twenty colored miners.

It is also without dispute in the evidence that the cost to Higginbotham of the busses, together with the expenses incident to their operation, and the cost of insurance, permits and licenses are such that if there is to be a competing transportation system between the camp and the mine, Higginbotham will have to discontinue operation.

After Higginbotham had secured his certificate of public convenience and necessity, the New Deal Riding Club filed its application for such a certificate. A large number of the members of the club appeared at the hearing before the Commission's examiners. A number of them stated they would not ride with Higginbotham, without being called upon to specifically state the reason why they would not ride with him. Viewing the evidence, as we have indicated we must, it shows that the relationship between Higginbotham, a white man, and the colored miners has not been good. He has had some personal encounters with some of them and bears the reputation of being "mean" to members of the colored race.

In view of the fact that the evidence is without dispute to the effect that Higginbotham's equipment is entirely adequate to furnish all transportation service needed by both the white and colored miners between Dixiana, where the camps are located, and the portal of the mine, the Commission's action in granting such a permit to the New Deal Riding Club must have been based on the evidence showing that the colored miners, or a large portion of them, would not ride with Higginbotham, either because they were afraid of him or because of their dislike for him.

We are clear to the conclusion that the Commission was not warranted in issuing the certificate of public convenience and necessity to the New Deal Riding Club on the ground that its members refused to ride with Higginbotham because of their fear of him or their dislike for him.

Without question, the evidence shows that because of financial reasons Higginbotham cannot and will not continue to operate as a common carrier of passengers between the camps and the portal of the mine if the New Deal Riding Club is permitted to compete with him as a common carrier of passengers. This would naturally result in depriving the white miners of any means of transportation, inasmuch as they are not eligible for membership in the New Deal Riding Club.

It is beyond any dispute in the evidence that the traffic is not sufficient to justify more than one operation. We do not mean to say that these colored miners should be compelled to ride in public conveyances, operating under the sanction and approval of the Alabama Public Service Commission, with a man whose conduct is

such as may cause them to fear for their safety or which might precipitate racial discord. However, it seems to us that if Higginbotham is not qualified by reason of his personal traits of character to operate as a common carrier so as to properly serve all members of the public covered by his certificate of convenience and necessity, it is incumbent upon the Commission to take such steps as within its power to revoke the permit heretofore issued to Higginbotham and to grant the permit to someone who is in a position to give adequate service to all alike.

As we view the decree of the trial court and the opinion made a part thereof, its action in vacating and setting aside the order of the Commission and annulling the certificate theretofore issued to the New Deal Riding Club is· predicated on the ground that there was no legal evidence before the Commission which justified the granting of the permit. In other words, the trial court found, and we think correctly so, that the Commission erred in its application of the law to the facts.

The decree appealed from is affirmed.
Affirmed.

LIVINGSTON, C. J., and FOSTER and SIMPSON, JJ., concur.