309 So.2d 453

**ALABAMA PUBLIC SERVICE COMMISSION et al.**

v.

**CHEM–HAULERS, INC., a corporation, et al.**

**SC 981.**

Supreme Court of Alabama.

Feb. 27, 1975.

Rehearing Denied March 27, 1975.

Carl Evans, Montgomery, for Alabama Public Service Commission.

Maurice F. Bishop, Birmingham, J. Douglas Harris, Montgomery, for intervenor-appellants.

Robert S. Richard and William K. Martin, Montgomery, for Ross Neely Express, Inc., Schwerman Trucking Co., and Ecoff Trucking, Inc.

Winston B. McCall, Birmingham, for appellees.

MERRILL, Justice.

The Alabama Public Service Commission overruled a finding of one of its examiners without making any findings of fact. The circuit court set the order aside. We affirm.

Deaton, Inc., and Chem-Haulers, Inc., filed an application with the Alabama Public Service Commission, hereinafter referred to as APSC or the Commission, under the provisions of the Alabama Motor Carrier Act of 1939, Tit. 48, §§ 301(1)–301(51), Code 1940, as amended, seeking approval to "split" Deaton's operating rights.

Deaton holds certificate of convenience and necessity No. 695 issued pursuant to Tit. 48, § 301(8). Certificate No. 695 authorizes the transportation of *general commodities* over irregular routes between (a) all points within a 125-mile radius of Birmingham; (b) Birmingham and all points within a 15-mile radius thereof and Mobile and all points within a 15-mile radius thereof; and (c) Mobile and all points and places within 10 miles thereof and Selma and all points within 10 miles thereof.

The parties sought to transfer to Chem-Haulers authority to transport *commodities in bulk*. Deaton was to retain authority to transport *general commodities, excluding commodities in bulk*.

After due notice, protests were filed by Miller Transporters, Inc., Matlack, Inc., Schwerman Trucking Co., Ross Neely Express, Inc., Ecoff Trucking, Inc., Decatur Petroleum Haulers, Inc., Redwing Carriers, Inc. and Fleet Transportation Company, Inc.

By written order of the Commission, the case was referred to an examiner for hearing and recommendation. Tit. 48, § 301(7). After hearing the evidence ore tenus, the examiner made a written report containing, among other things, evidence, conclusions, his analysis of the evidence,

legal standards applicable, and his findings and conclusions.

The examiner recommended that the transfer be approved, but the Commission denied the application for transfer with only this statement:

"We differ with the findings and conclusions of the Examiner. Upon consideration of all of the oral evidence, the pleadings, the exhibits, and the entire record, the Commission is of the opinion and finds that the proposed transfer to the extent sought by the application will not be consistent with the public interest."

Deaton and Chem-Haulers appealed to the Circuit Court of Colbert County, Tit. 48, § 301(27). Protestants in the APSC proceedings intervened. The circuit court set aside the order and remanded the case to the Commission with directions to approve the application for transfer of that portion of Certificate No. 695 which authorized the transportation of commodities in bulk. Intervenors then appealed from the order of the circuit court.

The proceedings on appeal to the circuit court are governed by Tit. 48, § 82, Code 1940. This section provides that the Commission's "order shall be taken as prima facie just and reasonable." The circuit court shall set aside the order if it finds that "the commission erred to the prejudice of appellant's substantial rights in its application of the law; * * * or was based upon a finding of facts contrary to the substantial weight of the evidence."

█ On appeal to this court, we must review the judgment of the circuit court without any presumption of its correctness, since that court was in no better position to review the order of the Commission than we are. Alabama Public Service Commission v. Nunis, 252 Ala. 30, 39 So.2d 409; Alabama Public Service Commission

v. Consolidated Transport Co., 286 Ala. 323, 239 So.2d 753. The evidence was not taken before the trial judge in the circuit court.

█ We are governed by the same rules in our review as was the circuit court. We review the order of the Commission as though the appeal from the Commission's order had been taken directly and primarily to this court. Alabama Public Service Commission v. Nunis, supra; Alabama Public Service Commission v. Consolidated Transport Co., supra.

Here, the Commission made no finding of facts. The rule of review which would normally control is the one stated in *Consolidated Transport,* supra, 239 So.2d at p. 756:

"* * * [Where] there is no finding of facts by the Commission, in considering whether the Commission erred in applying the law to the facts we must consider the evidence in the light most favorable to upholding the order of the Commission and without weighing the conflicting evidence. In other words, we do not weigh the conflicts in the evidence, but accept as true those tendencies of the evidence and reasonable inferences to be drawn therefrom which tend to support the action taken by the Commission. See Alabama Electric Cooperative, Inc., v. Alabama Power Co., *supra.*"

█ However, in the instant case, the evidence was heard ore tenus before the examiner—not the Commission. Appellants contend that the Commission can properly substitute its own judgment for the judgment of the examiner just as if the Commission had heard the evidence. We do not agree.

In Alabama Public Service Commission v. Perkins, 275 Ala. 1, 151 So.2d 627, another motor carrier case, the Commission rejected the findings of the examiner who

heard the evidence. The trial court reversed. This court, in affirming the lower court, discussed the relationship between the Commission and examiner at page 6, 151 So.2d at page 631:

"In the case before us, as we have shown, there was no hearing of evidence by the commission or its members. The evidence was heard ore tenus by the attorney-examiner duly appointed by it to conduct the hearing. From the evidence itself and the demeanor of the witnesses, he made findings and drew conclusions which he reported in writing to the commission. While it was the privilege of the commission to reach their own conclusions from the record before them, just as it is the privilege of the court to reach conclusions contrary to those of the commission, yet, as we have said in reviewing the judgment of the circuit court, the commission was in no better position than the circuit court or this court. Since the attorney-examiner alone saw and heard the witnesses and observed their demeanor on the stand, it would be illogical and unwarranted on the part of both the circuit court and this court not to indulge some favorable presumption in considering the attorney-examiner's report as a part of the whole record. Especially is this true when the findings and conclusions find support in the evidence. Upon the two essential questions of the fitness of the applicant, acting by and through its principal officer and owner, and the need for the proposed service, after a careful and attentive consideration of the entire record we reach the conclusion that the judgment of the circuit court, setting aside the order of the commission, should be affirmed."

But appellants contend that such a position is directly contrary to Tit. 48, §§ 82 and 301(7). This court, however, squarely met that contention on rehearing in *Perkins*:

"Appellant urges in support of his application for rehearing that we erred in according the report of the attorney-examiner, who heard the testimony ore tenus, more weight than the finding of the Public Service Commission on the report; and that we violated the 'substantial evidence rule', § 82, Tit. 48, Code of Ala.1940, as applied in [Citations omitted.]

"Upon a careful consideration of this argument, we have concluded that the rule as applied in those cases has not in any way been transgressed and that the application must be denied.

"Appellant will concede that the attorney-examiner is in the better position to determine the truth and veracity of those testifying at the hearing conducted by him. Thus, he must be in the better position to determine the weight to be accorded the testimony taken at such a hearing.

"We have not placed the burden of final decision upon the attorney-examiner; this, as it should, rests upon the members of the Commission. But when as here, the members of the Commission did not personally conduct the hearing and had not otherwise observed the demeanor of the witnesses, the evidence being conflicting, the findings of the attorney-examiner on factual issues should be accorded the usual presumptions. This is a basic theory upon which all appellate tribunals and decision-making bodies not observing the witnesses must operate, having only the benefit of the cold record before them." The examiner found that:

"A. That under the limited and specific circumstances of this application, applicants have established by legal evidence of record, that the separation of bulk commodities is consistent with the public interest.

"B. That there is no legal evidence that existing carriers will be adversely affected and whether the transfer will harm them is speculative and conjectural.

"C. That transferee, Chem-Haulers, will have no competitive advantage over protestants, but, on the contrary, under protestants own contentions, the existing competitive situation favors them. The tendency of the evidence is that the public is likely to have a better service if the transfer is approved. It is our duty to encourage the type of competition which improves service to the public.

"D. That the transfer is along clear-cut lines, and the entire class of specialized service of bulk commodities is to be transferred so that no duplication of service may result."

After reading the transcript of the proceedings before the attorney-examiner, we cannot say that his finding of facts was contrary to the substantial weight of the evidence. We are, therefore, remitted to the question whether there was a misapplication of the law.

Title 48, § 301(15) controls the transfer of certificates and requires a finding by the Commission (1) that the proposed transferee or lessee is in all respects qualified to conduct the service or operation contemplated by the certificate and (2) that the proposed transfer or the approval of said lease is consistent with the public interest.

The examiner expressly found that Chem-Haulers was in all respects fit to operate the bulk commodities authority now being operated by Deaton. Indeed, one of the arguments of appellants is that Chem-Haulers is too well qualified. Thus, the first requirement for the transfer of the certificate is satisfied.

The phrase "consistent with the public interest" is the controlling factor in our inquiry. "Consistent with the public interest," though not a finding of fact, constitutes an application of the law to the facts. Alabama Public Service Commission v. Consolidated Transport Co., supra; Alabama Electric Cooperative, Inc. v. Alabama Power Co., 274 Ala. 332, 148 So.2d 613.

■ Appellants submit that "consistent with the public interest" embraces the interest of competing carriers, as well as that of the shipping public. We agree. In Osborne Truck Lines, Inc. v. Alabama Public Service Commission, 284 Ala. 166, 223 So.2d 284, a contract carrier had applied for an operating permit. Tit. 48, § 301(11). Several common carriers protested that they would be adversely affected by the proposed transfer. We stated in *Osborne,* at p. 288:

" * * * when it appears that there is an existing plurality of common carriers who are willing, ready and able to provide with reasonable efficiency and promptness the service proposed by the applicant for a contract permit, the permit should not be granted, to the end that the financial status and physical assets of the common carriers may be protected against erosion and depletion. Want of such protection is inconsistent with public interest. * * *" However, in the instant case, the examiner found:

"That there is no legal evidence that existing carriers will be adversely affected and whether the transfer will harm them is speculative and conjectural."

Appellants contend that "certificate splitting" where any duplication of operations would result is not consistent with the public interest.

■ It is argued that approval of this application would enable those general commodity carriers retaining the authority to transport "general commodities except commodities in bulk" to continue to transport commodities in bulk through the use of barrels, drums or other type containers, and as a result, the 47 general commodity certificates in Alabama could be split to authorize 47 additional carriers or a total of 94 bulk carriers.

The fallacy of this argument is that it assumes a duplication of service. The evi-

dence before the Commission was to the effect that the Commission had never had difficulty in distinguishing between general commodity hauling and commodities in bulk. The examiner expressly·found that no duplication of service would result.

Appellants contend that it is the policy of the APSC not to transfer certificates which are dormant unless good cause is shown for such transfer. Floyd & Beasley Transfer Co., Inc. v. Alabama Public Service Commission, 276 Ala. 130, 159 So.2d 833.

We agree with appellants' statement of the law but, here again, the examiner found for the appellees:

"* * * Deaton has actively, throughout its history, held itself out to the shipping public as a liquid and dry bulk carrier. Deaton has endeavored to compete with protestants for available bulk commodity traffic.

"* ·* * The fact that Deaton used leased equipment from Chem-Haulers in much of its transportation of bulk commodities is of no consequence in this application."

We cannot say that this finding was against the substantial weight of the evidence.

We are not be understood as holding that APSC is required in all cases to make an express finding supporting its order. See *Nunis,* 252 Ala. 30, 399· So.2d 409[4, 5]. But when the Commission's examiner states the evidence and makes detailed findings and conclusions, the Commission, if it rejects the findings and conclusions, cannot rebut the attending presumption merely by stating·that "the proposed transfer * * * will not be consistent with the public interest."

Affirmed.

HEFLIN, C. J., and FAULKNER, JONES and SHORES, JJ., concur.