[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 769 
Pursuant to the provisions of section 301 (15) of Title 48 of the Alabama Code of 1940 (Recompiled 1958), Victory Freight Lines, Inc. and Vulcan Freight Lines, Inc. filed a joint application with the Alabama Public Service Commission to transfer a portion of Victory's authority under Motor Carrier's Certificate of Public Convenience and Necessity No. 718 to Vulcan.
A search of the record in this case does not disclose the exact contents of Certificate No. 718 immediately preceding the application for transfer, although the record does contain a copy of Certificate No. 718 as issued on April 19, 1945, when Victory first acquired the portion of the certificate which it now wishes to transfer. At that time, Certificate No. 718 contained the following pertinent provisions:
 "IT IS ORDERED BY THE COMMISSION: That Certificate of Public Convenience and Necessity No. 718, now standing in the name of * * * Victory Freight Line * * * is hereby amended to include, in addition to the authority therein contained, the right to operate as a common carrier by motor vehicle in the transportation of general commodities over a regular route:
 (1) Between Birmingham, Alabama and Tuscaloosa, Alabama * * *.
 (2) Between all points and places in Alabama over irregular routes of (a) machinery, materials, supplies and equipment, incidental to, or used in, the construction, development, operation, and maintenance of facilities for the discovery, development and production of natural gas and petroleum. (b) Machinery, material, supplies and equipment used in the construction, operation and maintenance of petroleum refineries. (c) Heavy machinery, heavy and cumbersome commodities, which, because of size and weight, require the use of special equipment, and parts thereof. (d) Machinery, materials, supplies and equipment, used in the construction, operation and maintenance of natural gas, water *Page 770 
and petroleum pipe lines, including but not restricted to, the stringing of pipe along rights of way. (e) Contractors equipment and supplies, heavy machinery parts, accessories and supplies, including heavy materials, and machinery." [Emphasis added.]
Victory and Vulcan requested that the Public Service Commission transfer to Vulcan the following authority from Certificate No. 718:
 "Heavy machinery, heavy and cumbersome commodities, which because of size and weight require the use of special equipment, and parts thereof: Between all points and `places in Alabama over irregular routes.'"
A hearing was held before an Alabama Public Service Commission Attorney-Examiner to consider the requested transfer, and the following carriers entered appearances in protest: Eagle Motor Lines, Inc.; Deaton, Inc.; Ross Neely Express, Inc.; Alabama Freight, Inc.; and Gadsden Truck Line, Inc. After the hearing, the Attorney-Examiner issued a report and proposed order, recommending that the proposed transfer be granted subject to the acceptance by Victory of a restriction concerning "appropriate" portions of Certificate No. 718 which Victory was to retain. In effect this restriction prevented Victory from carrying listed commodities which because of size and weight required the use of special equipment. The Attorney-Examiner indicated that the purpose for recommending this restriction was to prevent an inordinate amount of overlap between the authority transferred to Vulcan and the authority retained by Victory.
The Alabama Public Service Commission by order, dated July 8, 1975, adopted the Attorney-Examiner's report and recommended order and granted the requested transfer of that portion of Victory's certificate quoted above. This authority was issued to Vulcan as Motor Carrier Certificate No. 2915.
The Commission on January 16, 1976, reissued the balance of Certificate No. 718 to Victory. In its order, the Commission noted that Certificate No. 718 had been reissued to Victory in numbered paragraphs and it utilized that format in this latest reissuement and incorporated a "special equipment" restriction in six of the paragraphs. The certificate as reissued to Victory provided in pertinent part:
 "IT IS, THEREFORE, ORDERED BY THE COMMISSION, That Motor Carrier Certificate of Public Convenience and Necessity No. 718 is hereby re-issued on the records the Commission to Victory Freight Lines, Inc., authorizing operations as a common carrier by motor vehicle, in the transportation of:
1. COMMODITIES GENERALLY:
 Between Birmingham and Tuscaloosa over U.S. Highway 11, with restriction that no intermediate points be served.
2. NEW FURNITURE:
 Between Birmingham and Tuscaloosa, Sylacauga, Montgomery, and Alexander City, in truckloads, only, minimum 2000 pounds.
 3. BUILDING MATERIALS, LUMBER, PAINTS, GLASS, ROOFING AND TAR, MACHINERY, CULVERT PIPE, BOILERS AND STACKS, BOILER PARTS, PETROLEUM PRODUCTS, EMPTY DRUMS, AND AUTO PARTS (except such commodities which, because of size and weight, require the use of special equipment):
 Between Birmingham, on the one hand, and points and places located within a radius of 130 miles of Birmingham, on the other hand; truckloads only, minimum 5000 pounds.
 4. CAST IRON PIPE, IRON AND STEEL ARTICLES, as described in ATA Tariff No. 1-G, MF-APSC No. 35, and CONTRACTOR'S EQUIPMENT (except such commodities which, because of size and weight, require the use of special equipment):
 Between Birmingham, on the one hand, and between points and places located within a radius of 150 miles of Birmingham, on the other hand; truckloads only, minimum 10,000 pounds. *Page 771 
 5. GROCERIES, PRODUCE, BURIAL VAULTS AND CASKETS, HARDWARE, AND PLUMBING GOODS:
 Between Tuscaloosa and Birmingham via U.S. Highway 11.
6. PAPER ARTICLES, PRINTED AND PLAIN:
 Between Birmingham and Tuscaloosa, on the one hand, and within a radius of 100 miles of Tuscaloosa and Birmingham, on the other hand; truckloads only, minimum 5000 pounds.
 7. MACHINERY, MATERIALS, SUPPLIES AND EQUIPMENT Incidental to, or used in, the construction, development and production of natural gas and petroleum (except such commodities as require the use of special equipment):
 Between all points and places in Alabama over irregular routes.
 8. MACHINERY, MATERIAL, SUPPLIES AND EQUIPMENT Used in the construction, operation and maintenance of petroleum refineries (except such commodities as require the use of special equipment):
 Between all points and places in Alabama over irregular routes.
 9. MACHINERY, MATERIALS, SUPPLIES AND EQUIPMENT Used in the construction, operation and maintenance of natural gas, water, and petroleum pipelines, including, but not restricted to, the stringing of pipe along rights-of-way (except such commodities as require the use of special equipment):
 Between all points and places in Alabama over irregular routes.
 10. CONTRACTORS' EQUIPMENT AND SUPPLIES, HEAVY MACHINERY PARTS, ACCESSORIES AND SUPPLIES, INCLUDING HEAVY MATERIALS AND MACHINERY (except such commodities as require the use of special equipment):
 Between all points and places in Alabama over irregular routes.
 11. TELEPHONE, TELEGRAPH AND POWER LINE CONSTRUCTION MATERIALS:
 Between points and places in Alabama, truckloads only.
12. HOUSEHOLD GOODS:
 Between points and places in Alabama, truckloads only.
 13. LUMBER, PLYWOOD, LAMINATED FLOORING, AND RAILROAD TIES:
 From the plantsite of Birmingham Forest Products, Inc., near Cordova, Alabama, to all points in Alabama over irregular routes."
Eagle Motor Lines, Ross Neely Express, Deaton, Inc., and Arrow Truck Lines appealed the Commission's order of July 8, 1975, which had granted the transfer of authority, to the Montgomery County Circuit Court. On January 27, 1976, the circuit court affirmed the Commission's order and it is from this final judgment that the appeal to this court is taken.
In reviewing an order of the Commission, it should be remembered that there is a presumption of correctness accorded their order and this court will not substitute its own judgment on the findings of fact for that of the Commission's, except under extraordinary circumstances. Southern Haulers, Inc. v.Alabama Public Service Commission, Ala., 331 So.2d 660 (1976) citing Alabama Power Co. v. Alabama Public Service Commission,278 Ala. 597, 179 So.2d 725 (1965). In cases such as this where the evidence was heard ore tenus by a hearing examiner, as provided for in Title 48, §§ 66, 301 (7) Alabama Code 1940 (Recompiled 1958), rather than by the Commissioners themselves, the same presumption of correctness is given the examiner's findings of fact. Southern Haulers, Inc. v. Alabama PublicService Commission, Ala., 331 So.2d 660 (1976), citing AlabamaPublic Service Commission v. Perkins, 275 Ala. 1, 151 So.2d 627
(1962).
The factual development which follows is taken from the Attorney-Examiner's findings of fact. In 1970 the present owners of Victory Freight Line, Inc., purchased the company when it was in dire financial straits. At the time of the hearing, Victory had approximately $5,000 in available cash *Page 772 
and a long-term debt of approximately $210,000, of which $130,000 was then due and payable in full. In an effort to raise operating capital and to discharge the company's indebtedness, Victory entered into a contract with Vulcan Freight Line, Inc., whereby for the consideration of $250,000 Victory would transfer that portion of its carrier's certificate covering both intra- and interstate operation which is commonly referred to as "heavy hauling" authority. This contract was made contingent upon the approval of the transfer by both the Alabama Public Service Commission and the Interstate Commerce Commission. The contract contained several conditional provisions relative to the two agencies' approval and one of particular note was that if APSC approval was obtained prior to ICC approval, Vulcan could then commence operations under the intrastate authority involved. The contract also provided that if the ICC subsequently disapproved the transfer, then Vulcan would transfer this authority back to Victory.
At the time of the filing of the application for transfer, Vulcan was not a carrier, had conducted no operations and, in fact, had been in existence for only 12 days.
The protestants' right of appeal to this court from the circuit court's decree is provided for in Title 48, §§ 90, 301 (27) Alabama Code 1940 (Recompiled 1958).
In reviewing the decree of the circuit court, this court accords no presumption of correctness to it because the circuit court was in no better position to review the order than this court, and the review here is treated as though the appeal had come directly to this court. See, e.g., Alabama Public ServiceCommission v. Consolidated Transportation Co., 286 Ala. 323,239 So.2d 753 (1970); Alabama Public Service Commission v.Redwing Carriers, Inc., 279 Ala. 659, 189 So.2d 342 (1966);Alabama Public Service Commission v. Decatur Transfer Storage, Inc., 257 Ala. 346, 58 So.2d 887 (1952).
Section 82 of Title 48, Alabama Code 1940 (Recompiled 1958) serves as the guidepost by which the circuit court as well as this court reviews orders of the Alabama Public Service Commission and it provides in pertinent part:
 "The commission's order shall be taken as prima facie just and reasonable. No new or additional evidence may be introduced in the circuit court except as to fraud or misconduct * * * but the court shall otherwise hear the case upon the certified record and shall set aside the order if the court finds that: the commission erred to the prejudice of appellant's substantial rights in its application of the law; or, the order, decision or award was procured by fraud or was based upon a finding of facts contrary to the substantial weight of the evidence * * *." [Emphasis added.]
See, e.g., Alabama Public Service Commission v. Chem-Haulers,Inc., 293 Ala. 677, 309 So.2d 453 (1975); Alabama PublicService Commission v. Consolidated Transportation Co., 286 Ala. 323, 239 So.2d 753 (1970); Alabama Public Service Commission v.Higginbotham, 256 Ala. 621, 56 So.2d 401 (1951).
Thus, under section 82, Title 48, the review here will be two-pronged: (1) Was the Commission's order based upon a finding of facts contrary to the substantial weight of the evidence? (2) Did the Commission err to the prejudice of appellant's substantial rights in the application of the law to the facts? An affirmative answer to either of these inquiries will result in a finding for the appellant-protestants.
This court in North Alabama Motor Express v. Rookis, 244 Ala. 137, 12 So.2d 183 (1943), adopted the following rules, taken principally from 42 Am.Jur. 281 et seq., to be used in construing the scope and nature of review as regards the "substantial weight of the evidence" inquiry.
The finding of the Commission will not be overturned if it is supported by legal evidence of substantial weight and probative force, even though evidence was admitted during the hearing before the Commission which would not be admissible under general rules of evidence in a jury *Page 773 
trial. If the Commission's finding is based solely on hearsay or other improper evidence the Commission's decision will not be upheld for there must be some evidence presented to the Commission which is competent and legal under general rules of evidence. Substantial evidence means legal evidence. NorthAlabama Motor Express v. Rookis, 244 Ala. 137, 140,12 So.2d 183 (1943), cited in Alabama Public Service Commission v.Higginbotham, 256 Ala. 621, 624, 56 So.2d 401, 404 (1951).
The Attorney-Examiner made the following findings of fact in the case sub judice:
1. Vulcan has sufficient financial backing, ready access to the necessary equipment, and the management acumen to qualify in all respects as a motor carrier under the requirements set forth in the Motor Carrier Act, Title 48, §§ 301 (1) et seq., Alabama Code 1940 (Recompiled 1958).
2. Victory has actively conducted operations under that portion of Certificate No. 718 which it seeks to transfer to Vulcan.
3. During the five years of operation under its new management, the financial status of Victory has improved but due to the shortage of operating capital the condition of the company is still precarious. Disapproval of the proposed transfer could result in the cessation of operations by Victory.
4. The protestants failed to present concrete evidence that they would suffer any detrimental effect to their individual operations by virtue of approval of the proposed transfer of authority.
5. "The authority which Victory would retain in the event of transfer does not duplicate the authority Vulcan seeks to acquire. There is, however, a certain overlap between the two segments." Examiner's Report and Recommended Order, p. 10.
The protestants do not take issue with the first and second findings of the Examiner but do contend that the remaining three findings of fact are not supported by substantial evidence. After a careful review of the transcript of the proceedings before the Examiner, this court cannot say that his findings of fact are not supported by legal evidence of substantial weight and probative force. Therefore the focus of this opinion will be upon whether the substantial rights of the protestants have been prejudiced by a misapplication of the law to these findings of fact.
The statutory law which controls the transfer of Motor Carrier Certificates is Title 48, § 301 (15), Alabama Code 1940 (Recompiled 1958), quoted supra. This section requires that before a transfer of authority is granted the Commission must find (1) that the proposed transferee is in all respects qualified to conduct the service or operation contemplated by the certificate and (2) that the proposed transfer is consistent with the public interest.
As pointed out above, the Examiner expressly found that Vulcan was qualified to conduct the operations encompassed by the portion of Certificate No. 718 sought to be transferred and this finding has not been disputed by the protestants.
Thus this appeal rests upon the application of the phrase "consistent with the public interest" to the facts before this court. As stated in Alabama Public Service Commission v.Chem-Haulers, Inc., 293 Ala. 677, 309 So.2d 453 (1975), "`[c]onsistent with the public interest,' though not a finding of fact, constitutes an application of the law to the facts.Alabama Public Service Commission v. Consolidated TransportCo., supra, [286 Ala. 323, 239 So.2d 753 (1970)]; AlabamaElectric Cooperative, Inc. v. Alabama Power Co., 274 Ala. 332,148 So.2d 613 (1963)." 293 Ala. 677, 683, 309 So.2d 453, 457.
The protestants submit several grounds to argue that it is not consistent with the public interest to fragment a single paragraph of authority in a motor carrier's certificate. One being that fragmentation takes away from the public that which the public through testimony, during the initial hearing for issuance of the certificate, proved there was a need for. Further they submit that the original operating rights *Page 774 
were granted to Victory in order to enable it to afford a complete and adequate transportation service to shippers and that the result after fragmentation is that there are two carriers neither of which can provide the full range of services which the Commission originally found was needed in the area affected by the certificate. The protestants also contend that the applicants, Vulcan and Victory, had the burden of producing witnesses to testify in support of this transfer, in order to prove that said transfer was consistent with the public interest. Finally, the protestants submit that if this action is affirmed the wholesale splitting of thousands of separate paragraphs of authorities by the certified motor carriers in this state will result which would be to the detriment of the public interest.
To support these contentions protestants rely upon their counsel's own personal experience in representing clients before the Commission and several decisions of the Interstate Commerce Commission. Protestants concede that they are not able to cite an Alabama case to support their position but contend that the applicants are likewise unable to cite Alabama authority for their stand in opposition.
Victory and Vulcan respond to these assertions by stating that there is no statute or case law which states that a subparagraph of authority cannot be transferred. They argue that the real issue in a case of this nature is whether the splitting of a subparagraph of authority results in a duplication of operating rights after the resulting two authorities are created.
This court finds that the controlling consideration here, that of whether the public interest is served, is not to be judged by the form of the proposed transfer, not whether an entire paragraph of authority is transferred as opposed to a subparagraph, but rather the resulting effect of such transfer. In the instant case Certificate No. 718 was originally issued with two paragraphs of authority with the second paragraph containing five subparagraphs of authority. In 1965 this certificate was reissued to Victory and from what this court can determine there were then 14 separate paragraphs of authority with no subparagraphs.
The following Interstate Commerce Commission cases which are among those cited by the protestants, deal with requests for splits of authority and consider the argument regarding "complete service." Contractor's Hauling Service, Inc., 104 M.C.C. 343 (1967); Dale E. Alexander, 56 M.C.C. 151 (1949);H.E. Beard J.T. Laney, 55 M.C.C. 465 (1949). In each case the ICC found that such transfer would result in a duplication of operating rights, which under the peculiar facts of each case would be inconsistent with the public interest. This court here will also seek to make a determination on this basis.
The protestants' argument that Vulcan and Victory had the burden of producing witnesses other than their own employees to testify in behalf of the transfer is not supported by statute or case law. Substantial testimony and numerous exhibits were presented at the hearing and it cannot be said that the record here is inadequate in its coverage.
The protestants' final argument on this issue, wherein there is a prediction of a stampede of authority splitting in this state if the order of the Commission is affirmed, is also without legal merit for each case must be determined on its own merits.
The protestants also argue that the Commission's order granting the transfer was void because it constituted a grant of "temporary authority," which the Commission was not empowered by law to issue. This contention is based upon what the protestants allege was a tacit agreement between the Commission, Victory, and Vulcan that if after the APSC approved the requested transfer the ICC denied transfer of the interstate authority, the APSC would then retransfer the intrastate authority from Vulcan to Victory. The protestants point to the contract between Victory and Vulcan which provided that the agreement would not be consummated until approval from both the Alabama Public Service Commission *Page 775 
and the Interstate Commerce Commission were received, as being the controlling document from a practical point of view. This contention overlooks the fact that the terms of the contract between Victory and Vulcan can in no way bind the Alabama Public Service Commission to a later course of action.
Protestants have filed a motion pursuant to Rule 27, ARAP to strike those references made by the Appellees in brief to two decisions rendered by the ICC approving the transfer of the interstate authority which corresponds to the intrastate authority before this court. They contend that because these ICC decisions were not rendered at the time the application was argued before the Alabama Public Service Commission such reference amounts to new and additional evidence not contained in the certified record before this court.
This motion is denied due to the fact that these decisions of the ICC are not to be regarded as "evidence" but are to be regarded as all other ICC decisions which constitute persuasive authority when there is no Alabama authority in point. SeeAlabama Public Service Commission v. A-OK Motor Lines, Inc.,287 Ala. 182, 249 So.2d 838 (1970).
Therefore, this court takes notice of the fact that the Interstate Commerce Commission in its Order No. MC-FC-75752 (Service date October 2, 1975), approved the transfer by Victory, to Vulcan of the interstate authority that roughly corresponds to the intrastate authority transfer before this court. This ICC order became final on January 7, 1976. In their order, the ICC imposed a "special equipment" restriction on Victory's retained authority, similar to that imposed by the Alabama Public Service Commission. However, the ICC order was more comprehensive in its application of this restriction.
The final question for determination here, is whether this transfer has resulted in a duplication of operating rights to such an extent that it is in derogation of the public interest. The Public Service Commission Examiner addressed this question in his Report and Recommended Order, in the following manner:
 "The Examiner does not believe, however, that the transaction should be approved unconditionally. If those portions of the Victory certificates which overlap the authority being transferred to Vulcan were restricted against transportation of such commodities `which, because of size and weight, require the use of special equipment,' Victory would be very substantially impeded from providing any transportation service which Vulcan could provide. It is recognized that there is a so-called `grey' area which has existed for many years in interpretation of size and weight vis-a-vis non-size and weight authority which permits a certain overlap. It is contended that, if a commodity, because of its inherent nature, requires the use of a crane or similar mechanical device for loading, but can be transported by a conventional freight trailer such as a flatbed, then a carrier holding size and weight authority can handle it, as can a carrier holding authority restricted against size and weight commodities, if, in the latter case, all loading and unloading services are provided by the shipper and consignee, respectively. Notwithstanding this grey area, such a restriction would preclude Victory from offering service with lowboy trailers and other specified units. Eagle was the only protestant offering definitive evidence of participation by it in traffic which it contends both Vulcan and Victory could handle upon consummation of the proposed transaction. From the evidence, the Examiner finds and concludes that imposition of a restriction such as the one suggested above would preclude Victory from handling traffic for most of the customers whose freight Eagle fears would be subject to diversion to both vendor and vendee. Accordingly, acceptance by Victory of such a restriction upon those portions of its retained authority where the same would be applicable should be made a condition to approval of the transaction. *Page 776 
 "Subject to imposition of such restriction, and acceptance of the same by Victory, the Examiner finds that the proposed transfer is consistent with the public interest."
As stated earlier in this opinion, the Commission adopted the Examiner's Report and Recommended Order and granted the requested transfer on July 8, 1975. In this order the Commission recited that a further order would be forthcoming issuing the balance of Certificate No. 718 (Victory's authority) which would incorporate the restrictions and modifications. By later order (dated January 16, 1976), which has been previously quoted in this opinion, the Commission reissued the authority retained by Victory in the form of 13 numbered paragraphs. This court notes that the "special equipment" restriction was placed only on paragraphs 3, 4, 7, 8, 9, and 10, with the remaining seven paragraphs containing no similar restriction.
This court has recognized in the past and reiterates here that the Public Service Commission is a body of experts.Alabama Power Co. v. Alabama Public Service Commission,278 Ala. 597, 179 So.2d 725 (1965). The Commission's finding that there is an inherent "grey area" involved in size and weight authorities and non-size and weight authorities is borne out by the research done in the preparation of this opinion. However, it is the opinion of this court that the purpose of the recommendation of the Examiner to the Public Service Commission and the order of the Alabama Public Service Commission adopting the Examiner's report were to place the special equipment restriction on the "appropriate paragraphs" of Victory's retained authority. It does not appear that the order of January 16, 1976 was totally consistent with the recommendation of the Examiner and the order of the APSC dated July 8, 1975. For example, paragraphs 1 and 11 of Victory's retained authority, which authorize the transportation of commodities generally between Birmingham and Tuscaloosa, and the transportation of telephone, telegraph and power line construction materials between all places in the state, respectively, contain no special equipment restriction. As they now read, these two paragraphs are subject to an interpretation that could create an impermissible amount of overlap between Victory and Vulcan's operating authority. It also appears that some of the other five paragraphs (2, 5, 6, 12, and 13), which do not contain a special equipment restriction, create a possibility for objectionable overlap. However, as pointed out above, this court recognizes the APSC as a body of experts and will allow the Commission to apply its expertise to a resolution of which are the appropriate paragraphs which should be restricted.
This case is therefore due to be remanded to the Alabama Public Service Commission in order that it may review all of the authority retained by Victory and place a special equipment restriction on the appropriate paragraphs so that the intent of the Examiner as expressed in his Report and Recommended Order and the intent of the order of the Commission dated July 8, 1975 are effectuated.
REMANDED WITH INSTRUCTIONS.
BLOODWORTH, JONES, ALMON and EMBRY, JJ., concur.