WELCH, Judge,
dissenting.
In an unpublished memorandum, the majority affirms the circuit court’s dismissal of Eugene Andrews’s petition for a writ of certiorari. I respectfully dissent.
On September 11, 2014, Andrews filed a petition for a writ of certiorari in the Montgomery Circuit Court. In his petition, Andrews, who was convicted of manslaughter, argued that he was improperly classified as a restricted offender and that the classification system implemented by the DOC was administered maliciously. Specifically, Andrews argued that because he was convicted of manslaughter he did not qualify for classification as a restricted offender under an Alabama Department of Correction (“DOC”) rule that classified an inmate who committed an execution-style murder as a restricted offender.[1]
On December 30, 2014, the DOC moved to dismiss the petition or, in the alternative, for a summary judgment, arguing that Andrews was not entitled to due process because he had asserted no protected liberty interest and that an inmate does not have a constitutional right to a particular custody classification. The DOC further argued that Andrews was properly classified. In support of its motion, the DOC attached a copy of Andrews’s institutional record that included, among other things, a report provided by the Houston County District Attorney’s office setting forth the details of Andrews’s offense. On December 31, 2014, the circuit court dismissed the petition.
On January 20, 2015, Andrews filed a motion to alter, amend, or vacate the court’s judgment pursuant to Rule 59, Ala. R. Civ. P. In this motion, he argued that he was denied due process because he did not receive the State’s response to his petition, that the circuit court erred in not providing notice that the State’s response had been filed, and that he “was never provided with 10-day-requirement notice after the filing of the defendant’s motion” as required by Rule 56(c), Ala. R. Civ. P. (C. 62.) The circuit court denied Andrews’s motion on April 13, 2014. This appeal followed.
On appeal, Andrews reasserts his claim that the DOC improperly classified him as a “restricted offender.” Andrews also *288 reasserts the claims he raised in his Rule 59, Ala. R. Civ. P., motion.
A circuit court’s review of the acts of an administrative agency, such as the DOC, is very limited:
“ ‘On petition for writ of certiorari the circuit court is, as is the appellate court, limited in its review of quasi-judicial acts of administrative officers and boards. The limited function of that review is to determine whether the act in question was supported by any substantial evidence, or whether findings and conclusions are contrary to uncontradicted evidence, or whether there was an improper application of the findings viewed in a legal sense. Sanders v. Broadwater, 402 So.2d 1035 (Ala.Civ.App.1981). Judicial review of administrative acts and decisions is limited in scope, and ordinarily the courts will only pass on the question of whether the administrative agency has acted within its constitutional or statutory powers, whether its order or determination is supported by substantial evidence, and whether its action is reasonable and not arbitrary. Little Caesar’s, Inc. v. Alabama Alcoholic Beverage Control Bd., 386 So.2d 224 (Ala.Civ.App.1979).
“ ‘A court may not set aside an order of a fact-finding administrative body, acting within the field of its designated powers, unless the order is illegal, capricious, or unsupported by substantial evidence. Little Caesar’s, Inc. v. Alabama Alcoholic Beverage Control Bd., supra; Alabama Electric Cooperative v. Alabama Power Co., 278 Ala. 123, 176 So.2d 483 (1965); 73 C.J.S. Public Administrative Bodies and Procedure, 202 et seq. (1951). “Substantial evidence” means legal evidence. Little Caesar’s, Inc. v. Alabama Alcoholic Beverage Control Bd., supra; Eagle Motor Lines, Inc. v. Alabama Public Service Commission, 343 So.2d 767 (Ala.1977). The order of an administrative board is not to be vacated because of receipt of evidence not admissible under general rules of evidence, so long as there is sufficient legal evidence to sustain the order. However, such illegal evidence will not be considered by the reviewing court in determining if there was substantial evidence to support the order of the Board. Edmondson v. Tuscaloosa County, [48 Ala.App. 372,] 265 So.2d 154 (Ala.Civ.App.1972).’
“Ellard v. State, 474 So.2d 743, 750 (Ala.Crim.App.1984), aff'd, 474 So.2d 758 (Ala.1985).”
Austin v. Alabama Dep’t of Corr., 975 So.2d 398, 403 (Ala.Crim.App.2007)(reference to additional cases omitted).
Andrews’s claim regarding classification relates to due process. The Due Process Clause affords procedural protections against the deprivation of constitutionally protected liberty interests. Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005); Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); Ohio Adult Parole Auth. v. Woodard, 523 U.S. 272, 280, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998). This Court has long held that inmates of Alabama’s prison system do not have a liberty interest with respect to a particular custody or security classification. See Handley v. State, 549 So.2d 630, 631 (Ala.Crim.App.1989)(“[C]ustody classifications in prison do not amount to matters in which the inmate has a constitutional right.”); Moody v. Daggett, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976). Moreover, “ ‘the classification scheme adopted by the Alabama prison system to determine the custody status of prisoners “is not arbitrary and capricious, but reason *289 able and appropriate.” ’ ” Hill v. State, 594 So.2d 246, 248 (Ala.Crim.App.1992) (quoting Monroe v. Thigpen, 932 F.2d 1437, 1441 (11th Cir.1991), quoting in turn, Hendking v. Smith, 781 F.2d 850, 852 (11th Cir.1986)). This Court has recognized, “the classification system used by the Alabama prison system ... becomes constitutionally offensive only if ‘the regulation is administered maliciously or in bad faith.’” Hill v. State, 594 So.2d at 248 (quoting Hendking v. Smith, 781 F.2d 850, 852 (11th Cir.1986)). Further, the Constitution proscribes only the use of admittedly false information, see Monroe, 932 F.2d at 1441, not mere assertions that erroneous information may exist in the prisoner’s file. Slocum v. Georgia State Bd. of Pardons & Paroles, 678 F.2d 940 (11th Cir. 1982).
The issue before this Court is whether the DOC, in classifying Andrews as a restricted offender, administered its own regulation arbitrarily or in bad faith by applying item 6—execution-style murder— to Andrews who had been convicted of manslaughter. I believe that it did.
The DOC’s Classification Manual states that “[t]he following category of inmates will require review for the ‘R’ suffix ... 6—Execution Style Murder.” Section 5.4.3.1.1. (C. 41.) In the same section of the manual, the DOC refers to various offenses and convictions that require review for restricted status, the “R” suffix. The question is whether the “execution-style murder” provision includes inmates like Andrew—who were convicted of manslaughter—for the purpose of being classified as a restricted offender.
The DOC contends in its response at trial and on appeal that Andrews was properly classified because, it says, the evidence indicated that Andrews killed his wife by placing the gun used to kill her in close contact with her head before he pulled the trigger, leaving a muzzle burn on her skin. According to the DOC, a direct-contact gunshot wound is associated with an execution-style homicide.
In its application of the guideline, the DOC has included any homicide under item 6, execution-style murder. This application conflicts with the plain language of the guideline. In Alabama, manslaughter does not contain either the same level of intent or of culpability as does murder. The plain reading of the guideline does not support reading “execution-style murder” to encompass the killing committed by an inmate convicted of manslaughter. The language of the guideline is not as broad so as to encompass a conviction for any homicide. See, e.g., DeKalb Cty. LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 275-76 (Ala.1998) (‘““Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says.” ’ ” (quoting other cases)).[2]
Further, even if this Court were to agree with the DOC that the guideline encompasses a conviction for any homicide and not a conviction for murder only, such a conclusion would be insufficient to support a finding that the execution-style portion of the guideline applies to reckless manslaughter.[3] When one takes another’s *290 life in the manner of an execution, the intent to kill is implicit in that manner. See Hargrave v. Wainwright, 804 F.2d 1182, 1195 (11th Cir.1986) (noting that “[a]n execution-style murder, as defined by the Florida courts, is typically one in which the defendant, without provocation, first renders his victim helpless—for example, by wounding the victim, tying the victim’s hands, or ordering the victim to the floor— and then shoots the victim in the head at close range, often to eliminate the victim as a future witness”). Execution-style slayings evince a cold, calculated design to kill. See Bush v. State, 431 So.2d 555 (Ala.Crim.App.1982). To conclude that one can recklessly kill someone execution-style is nonsensical. In addition, the jury heard the evidence presented at trial and determined that Andrews was not culpable of murder. To allow the DOC to determine on its own that in committing the offense Andrews possessed a higher degree of culpability than found by the jury is fundamentally unfair, arbitrary and capricious. Accordingly, the DOC should not have applied item 6, execution-style murder, to Andrews in its classification of Andrews as a restricted offender.
Although an inmate does not have a liberty interest in a particular classification status implicating the due-process protections of Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the DOC may not administer the classification system arbitrarily and capriciously. When the DOC does so, the inmate should be entitled to relief. Because I do not believe the DOC should have classified Andrews as a restricted offender under its current classification guidelines, I do not agree that the trial court properly dismissed Andrews’s petition. I would reverse the trial court’s decision and remand the case to the trial court for proceedings consistent with this writing. Therefore, I dissent.

. Andrews was charged with and tried for murder; he was convicted of the lesser-in-eluded offense of manslaughter.

. We also note that the manual contains several guidelines in that same section that include both murder and manslaughter convictions; however, item 6 includes only murder. In addition, item 9 allows for review on a case-by-case basis of inmates whose offenses are of such a violent nature that restriction may be warranted.

. The record filed in Andrews’s direct appeal indicates that Andrews was convicted of reckless manslaughter. See § 13A-6-4(a), Ala. *290 Code 1975. Although the record of Andrews’s trial is not a part of the record in the present appeal, this court may take judicial notice of its own records, and I do so in this case. See Nettles v. State, 731 So.2d 626, 629 (Ala.Crim.App.1998), and Hull v. State, 607 So.2d 369, 371 n. 1 (Ala.Crim.App.1992).